[L. A. No. 8876. Department One.—December 9, 1927.]

GEORGE I. VERBECK et al., Respondents, v. FOREST D. CLYMER et al., Appellants.

[1] REAL PROPERTY — LEGAL TITLE — RIGHT OF POSSESSION — PRESUMPTION.—It is a presumption of law from the legal title that the holder thereof is entitled to possession of the premises, and possession by another is deemed to be under and in subordination to the legal title.

[2] ID.—PLEADING — EQUITABLE DEFENSE.—It is elementary that if a defendant wishes to avail himself of an equitable defense he must set it up in his answer.

[3] ID. — VENDOR AND VENDEE — DEFAULT — EQUITABLE DEFENSE. — Where the legal title to real property is in the plaintiff and that fact is admitted by the defendants, the latter cannot successfully defend against an action in ejectment unless they make out a complete equitable title in themselves with the right of possession thereunder.

[4] ID. — VENDEE IN POSSESSION — UNEXCUSED FAULT—FAILURE TO ALLEGE EQUITY.—Where a vendee in possession of real property under a contract of purchase by which the purchase price is

---

1. See 25 Cal. Jur. 692.
2. See 9 Cal. Jur. 1001; 9 R. C. L. 900.
3. See 9 Cal. Jur. 1000.

payable in monthly installments fails to set up in his answer a plea in abatement that a forfeiture under the terms of the contract should not occur until the expiration of a certain number of days after the due date of the payments and fails to tender payment which was long overdue at the time of the filing of the answer, he fails to do equity.

[5] ID. — PREMATURE ACTION — DILATORY PLEA. — It is well settled that the plea that an action has been prematurely brought is in the nature of a dilatory plea which must be specially pleaded in order to be available as a defense.

[6] ID.—CONTRACT OF PURCHASE AND SALE—USURY.—Where a contract is admittedly a *bona fide* one of sale and purchase of real property in which the title is retained by the vendor and the purchase price is therein named and the terms of sale are fixed and certain deferred payments are provided for, the parties being unfettered, dealing with each other at arm's-length and in apparent good faith, the transaction is not in any sense a loan within the meaning of the usury law.

[7] ID. — ELEMENT OF USURY. — The first element of a usurious transaction is that there be a loan or forbearance of money, for, if there is neither, there can be no usury, unless a statute has given some definition of usury inconsistent with that of the common law.

[8] ID.—SALE OF PROPERTY — HIGHER PRICE ON CREDIT — USURY. — The owner of property, whether real or personal, has a perfect right to name the price at which he is willing to sell, and to refuse to accede to any other; and he may offer to sell at a designated price for cash or at a much higher price on credit, and the credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense.

(1) 2 C. J. p. 264, n. 86; 19 C. J., p. 1083, n. 51.  (2) 31 Cyc., p. 131, n. 17.  (3) 19 C. J., p. 1085, n. 83.  (4) 1 C. J., p. 138, n. 3. (6) 39 Cyc., p. 926, n. 86.  (7) 39 Cyc., p. 925, n. 83.  (8) 39 Cyc., p. 927, n. 89, p. 928, n. 93.

APPEAL from a judgment of the Superior Court of Los Angeles County.  J. Walter Hanby, Judge.  Affirmed.

5.  See 1 Cal. Jur. 80.

7.  What transactions are usurious, notes, 55 Am. Dec. 392; 46 Am. St. Rep. 178.  See, also, 27 R. C. L. 213.

8.  Increasing price for sale on credit as usury, note, 28 L. R. A. (N. S.) 102.  See, also, 27 R. C. L. 214.  Sale of property or performance of labor on credit as within usury law, note, 20 Ann. Cas. 1131.

The facts are stated in the opinion of the court.

George L. Sanders for Appellants.

Denio & Hart for Respondents.

PRESTON, J.—This is an ordinary action in ejectment with a prayer for $10,000 in damages for the unlawful withholding of possession of the premises described in the complaint. The foundation of the action is an allegation of title and the right of possession thereunder and the wrongful withholding thereof by defendants. The defendants admit title in plaintiff and also admit their possession of the premises, but they deny that such possession is wrongful. As a special defense the answer sets up a contract of sale and purchase of said premises wherein plaintiffs agreed to sell and defendants agreed to buy the same for $20,000. It alleges also an initial payment of $5,000, with the balance of $15,000 to be spread out over a period of fifteen years, which with the interest added would be discharged in 180 months by the payment of $200 on the first of each and every month, which payments defendants agreed to make. Payment of an installment of $200 on the first day of October, 1924, and of a second one on the first day of November, 1924, is alleged. It is not alleged, nor is it claimed, that any subsequent payments have been made or tendered, nor is it alleged that defendants have performed all or any of the covenants and conditions on their part to be kept and performed under said contract of purchase. In short, the anwser does not show defendants to be free from default under said contract. The answer, however, attempts to allege usury in the transaction by stating that more than twelve per cent per annum as interest on the deferred payments is exacted under said contract and on that account the whole obligation to pay interest is void and the maturity date of the contract is by operation of law deferred until the expiration of said period of fifteen years. The effect of the answer in short is that defendants claim the right to possession of the premises without the payment of any interest and with an obligation to pay the balance of the principal only at the expiration of the fifteen-year period. The answer by no

means contains all of the demands of the defendants. They also filed a cross-complaint setting forth said contract of sale and purchase as above alleged and containing the further allegation that $21,000 interest was provided for in said contract; that on account of the existence of usury in the transaction the obligation to pay interest was void and defendants were entitled as a penalty to judgment against plaintiffs for treble said interest item, to wit: the sum of $63,000, and this without the payment of a cent of interest except the undetermined amount in the two payments of $200 each made by defendants before their appetites were sharpened.

The net result of the answer and cross-complaint is that defendants ask to be allowed in effect both the title and the purchase price of said property and in addition thereto that plaintiffs should pay defendants $48,000 for the privilege of donating the property to them. There is anything but modesty in the claim of defendants. So avaricious are they that not only do they ask for all the aforesaid relief but they claim that plaintiffs were in contempt of court in asking for judgment in their favor on the pleadings and in that behalf they said: " . . . and that said plaintiffs at all times since have been and now are in contempt of court and in express, gross, wilful and flagrant disobedience of the orders of the court. . . . " Notwithstanding this challenge of defendants, plaintiffs waived their prayer for damages and pursued their motion for judgment on the pleadings, which after consideration the court granted and thereupon gave its judgment in their favor and against defendants, among other things specifying therein as follows: " . . . it appearing to the satisfaction of the court from said pleadings that the fee simple title to said property is admitted to be in plaintiffs and that defendants are unlawfully in possession of said premises, and said defendants failed to set up in their answer an equity in and to said property hereinafter described or in and to any part thereof, and it being made to appear that defendants and cross-complainants are not entitled to plead a cross-complaint for a money judgment in an action of ejectment, and there being no issue to try, it is ordered, adjudged and decreed that the plaintiffs, as the owners in fee simple and entitled to possession of the premises described in said complaint herein, to wit:

(describing the premise) . . . and that said plaintiffs have and recover possession thereof. . . . "

The action of the court in granting judgment for plaintiffs on the pleadings is clearly correct. We find no equity on the face of the answer.

[1] It is a presumption of law from the legal title that the holder thereof is entitled to possession of the premises (*Willis* v. *Wozencraft*, 22 Cal. 607, 615) and possession by another is deemed to have been under and in subordination to the legal title (Code Civ. Proc., sec. 321).

Where the legal title is admitted to be in plaintiffs, defendants can only prevail against them by setting up an equitable defense, "and the equity presented must be of such a character that it may be ripened by a decree into a legal right to the premises or such as will estop the plaintiff from the prosecution of the action" (9 Cal. Jur., p. 1000).

[2] It is elementary that if a defendant wishes to avail himself of an equitable defense he must set it up in his answer (*Dorn* v. *Baker*, 96 Cal. 206 [31 Pac. 37]).

[3] Where a vendee in possession under a contract of purchase has failed to perform his part of the contract and is in default with respect thereto without excuse he cannot maintain an equitable defense in an action of ejectment by the vendor (*Connolly* v. *Hingley*, 82 Cal. 642 [23 Pac. 273]; *Howard* v. *Hewitt*, 139 Cal. 614 [73 Pac. 414]). "A purchaser cannot remain in possession of lands under a contract and at the same time refuse to pay the purchase price. . . . " (*Rhorer* v. *Bila*, 83 Cal. 54 [23 Pac. 274]; *Gates* v. *McLean*, 70 Cal. 49 [11 Pac. 489]; *Gervaise* v. *Brookins*, 156 Cal. 106 [103 Pac. 329]). The essence of the rule is that where the legal title to the property is in the plaintiff and that fact is admitted by the defendants, defendants cannot successfully defend against an action in ejectment unless they make out a complete equitable title in themselves with the right of possession thereunder (*Wallace* v. *Maples*, 79 Cal. 433 [21 Pac. 860]; *Flint* v. *Conner*, 53 Cal. App. 279 [200 Pac. 37]). The decisions of this court are replete with announcements of the above principles and we need not here pause for further citations.

[4] The answer to the cross-complaint in this action sets out the written contract between the parties as an exhibit

202 Cal.—36

thereto from which it appears that as to the monthly payments called for by said contract, forfeiture should not occur until expiration of the period of ninety days from and after the due date of such payment, but defendants have not by answer or by plea in abatement or otherwise attempted to assert the premature institution of the action nor do they, either in the answer or cross-complaint, tender to plaintiffs any of the payments which were long overdue at the time of the filing of the answer herein. In other words, they have wholly failed to do equity under the circumstances. [5] It is well settled that the plea that an action has been prematurely brought is in the nature of a dilatory plea which must be specially pleaded in order to be available as a defense (*Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 565, 573 [194 Pac. 1024]; *Bemmerly* v. *Woodward,* 124 Cal. 568 [57 Pac. 561]).

[6] But the whole essence of defendants' astonishing claims lies in their attempt to call to their aid the provisions of the usury law. It is now well settled that in a case where the usury is established, the obligation to pay interest is void and the maturity date of the principal cannot be accelerated on account of the nonpayment of interest (*Haines* v. *Commercial Mortgage Co.,* 200 Cal. 609 [53 A. L. R. 724, 254 Pac. 956]). The claim of defendants seems to be that the obligation set up in their answer is in the nature of a loan and that as such it is usurious; the obligation to pay the principal sum is, therefore, deferred by operation of law until the expiration of the fifteen-year period and as a consequence they may not be said to be in default under their contract of purchase. Inasmuch as there is no way of separating the interest payments from the payments on the principal, there might be substance in this contention if indeed the transaction is usurious (*Haines* v. *Commercial Mtg. Co., supra*), for it is undoubtedly the law that under certain circumstances a contract tainted with usury may be a proper subject for the interference of a court of equity to prevent a declaration of a forfeiture. But we have no hesitancy whatsoever in declaring that the transaction set up in the answer and cross-complaint is not in any sense a loan within the meaning of said usury law. The contract is admittedly a *bona fide* one of sale and purchase of real property where the title is retained

by the vendor. The purchase price is therein named and the terms of sale are fixed and certain deferred payments are provided for. There is in the transaction no element of a loan. The parties were unfettered, dealt with each other at arm's-length and in apparent good faith. The transaction was not a subterfuge devised to conceal what was in fact a loan. In view of this conclusion there is no room whatsoever for the contention that the usury law will intervene to give equitable relief to defendants or to penalize the plaintiffs. This holding was foreshadowed by what was said in *In re Washer,* 200 Cal. 598 [254 Pac. 951], to the effect that sale by a corporation of securities of its own issue of stock or securities was not a violation of the usury law. If the sale by a corporation of its stock or securities of its own issue is not a loan within the usury law, how much more certain must be the conclusion that the sale of one's own property is not a loan whatever be the terms or conditions of purchase. This principle is announced as follows in 39 Cyc., page 926: "It is manifest that any person owning property may sell it at such price and on such terms as to time and mode of payment as he may see fit, and such a sale, if *bona fide,* cannot be usurious, however unconscionable it may be."

[7] The principle is stated in 27 R. C. L., pages 213–215, sections 14, 15, as follows: "The first element of a usurious transaction is that there be a loan or forbearance of money, for, if there is neither, there can be no usury, unless a statute has given some definition of usury inconsistent with that of the common law. . . . [8] On principle and authority, the owner of property, whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense; and it has been held that it is not material that the agreement for the purchase price in the future, instead of specifying the whole sum then to be paid, names a particular sum as principal, and declares that it shall draw interest at a rate which, were the transaction a borrowing and lending, would clearly be usurious; . . . "

In the case of *Holland-O'Neal Milling Co.* v. *Rawlings,* 217 Mo. App. 466 [268 S. W. 683, 686], the court said: "The owner of property, whether real or personal, has a right to name the price at which he is willing to sell. He may offer to sell at a designated price for cash, or at a much higher price on a credit, and a credit sale will not constitute usury, however great the difference between the cash price and the credit price, unless the whole transaction was in fact a mere pretense and a sham in order to camouflage the real facts."

See, to the same effect, *General Motors Acc. Co.* v. *Weinrich,* 218 Mo. App. 68 [262 S. W. 425]. An exact parallel of the case at bar is *Edwards* v. *Wiley,* 150 Ark. 480 [235 S. W. 54, 55], where the court said: "The complaint alleged that on March 20, 1910, appellant, John B. Edwards, was the owner of lot 5, in block 65, in the City of Ft. Smith, and that its then value was $1,500; that, in order to obtain an exorbitant rate of interest, Edwards fixed the price of the lot at $2,250, and contracted to sell it to William Wiley at that price, payments to be made at the rate of $20 per month, payable quarterly, with interest at 8 per cent, and that this price was fixed as a subterfuge whereby usurious interest might be collected. This branch of the case may be disposed of by saying that all the testimony shows that the transaction between Edwards and Wiley was one for the sale of the lot. Neither of the parties intended nor contemplated a loan of money, and it was not such in fact. This was a sale, and was so intended, and the exaction of a price, however exorbitant, cannot import into the transaction the characteristics of usury, as the element of lending and borrowing money is absent. Such was the express holding of *Ellenbogen* v. *Griffey,* 55 Ark. 268 [18 S. W. 126], and reaffirmed in the case of *Blake Bros.* v. *Askew & Brummett,* 112 Ark. 514 [166 S. W. 965], and the more recent case of *Smith* v. *Kaufman,* 145 Ark. 548 [224 S. W. 978]."

This holding also disposes of the cross-complaint which prays for a judgment in treble the amount of the item designated as interest and renders unnecessary a consideration of any of the many other attacks made upon the legal sufficiency thereof as well as the propriety thereof under our rules of pleading.

The fact that we do not further discuss the matter is by no means to be taken as an indication that we do not think the contentions meritorious.

Judgment affirmed.

Curtis, J., and Seawell, J., concurred.