[Civ. No. 41150. First Dist., Div. Four. Aug. 15, 1978.]

CRESTWOOD LUMBER COMPANY, Plaintiff and Appellant, v.
CITIZENS SAVINGS AND LOAN ASSOCIATION,
Defendant and Respondent.

## Counsel

Basye, Prior & Kavanaugh and Charles A. Pinkham, Jr., for Plaintiff and Appellant.

James L. McIntosh for Defendant and Respondent.

## Opinion

**PAIK, J.***—Plaintiff-appellant Crestwood Lumber Company (hereafter appellant) appeals from a judgment in San Mateo County Superior Court. In this stop notice—breach of contract action, the court awarded judgment in favor of appellant and against defendant-respondent Citizens Savings and Loan Association in the sum of $10,356.72 plus costs, disbursements and attorney's fees, but denied appellant any interest on said amount on the ground that the interest provided for in the contract was usurious.

*Assigned by the Chairperson of the Judicial Council.

Appellant contracted with Nachtsheim Associates to sell lumber to be used in constructing improvements on real property owned by it. The sales orders contain the following language: "ACKNOWLEDGEMENT OF YOUR ORDER . . . TERMS AND CONDITIONS ON REVERSE SIDE . . . TERMS: PAYMENT DUE WITHIN 10 DAYS FROM DATE OF INVOICE—LESS 2%." On the reverse side, subsequent to provisions regarding cancellation and delivery, the orders state: "A FINANCE CHARGE OF 1½% PER MONTH (ANNUAL PERCENTAGE RATE OF 18%) WILL BE MADE ON ALL OVERDUE ACCOUNTS." The invoices, sent with the lumber shipments, also state: "INTEREST CHARGED AT THE RATE OF 18% PER ANNUM ON ALL OVERDUE ACCOUNTS."

When Nachtsheim failed to pay, appellant filed a stop notice action against respondent, who was the construction lender for the improvement work. (See Civ. Code, §§ 3156-3175.) Following the California Supreme Court's decision in *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803 [132 Cal.Rptr. 477, 553 P.2d 637], upholding the stop notice statutes, appellant moved for judgment. Respondent did not dispute the claim for principal and costs, but opposed the request for interest and attorney's fees.

After a hearing on the motion, the trial court decided that the 1½ percent per month interest provision was usurious and therefore void, but that attorney's fees were recoverable. Accordingly, judgment was entered in favor of appellant for principal, costs, disbursements and attorney's fees, but appellant's request for interest was denied. Appellant appeals from that portion of the judgment concerning the interest.

This case comes before us in an unusual posture because the finance charges in question would unquestionably be permitted if this transaction were a retail installment sale under the Unruh Act. (See Civ. Code, §§ 1802.10, 1810.2.)[1] However, the act is inapplicable here, since it only applies to sales of consumer goods. (§ 1802.1; 2 Witkin, Summary of Cal. Law (8th ed. 1973) Sales, § 235, pp. 1260-1261.)

We must therefore determine whether the finance charge constitutes a penalty, part of a bona fide sale, or the forbearance of money by the seller. Appellant contends that the finance charge does not constitute forbearance, or that if it does, it comes within the "exception"

---

[1]All future statutory references, unless otherwise noted, are to the Civil Code.

to the usury law as being part of a bona fide sale of merchandise. ▮
Respondent contends that since the charge accrues only upon nonpayment of the purchase price, it constitutes interest upon the "forbearance of money" by the seller and therefore is subject to California prohibitions against usury. (Cal. Const., art. XV, § 1; Deering's Ann. Uncod. Measures 1919-1 et seq. (1973 ed.) p. 35 et seq.; 10 West's Ann. Civ. Code (1954 ed.) foll. § 1916 et seq.) Alternatively, respondent argues that the provision imposes a penalty for nonperformance which is void under applicable principles governing liquidated damages. (§§ 1670, 1671.)

Article XV, section 1 of the California Constitution provides, in pertinent part: "The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand or judgment rendered in any court of the State, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest not exceeding 10 per cent per annum. [¶] No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 per cent per annum upon any loan or forbearance of any money, goods or things in action."

"Forbearance" is "the giving of further time for the repayment of an obligation or an agreement not to enforce a claim at its due date." (*Boerner* v. *Colwell Co.* (1978) 21 Cal.3d 37, 44, fn. 7 [145 Cal.Rptr. 380, 577 P.2d 200]; see also *Calimpco, Inc.* v. *Warden* (1950) 100 Cal.App.2d 429, 440 [224 P.2d 421]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 387, p. 324.) It is apparent that the extension of time for payment of a debt due constitutes a forbearance on the part of the creditor within the meaning of the usury law. Such forbearance cannot be construed as part of a credit sale, for the interest becomes due only in the event of a default on the part of the purchaser to pay the amount due. As stated in the annotation in 91 A.L.R. 1105 (1934): "The moment such obligation falls due, its association with the sale is severed. It is no more a part of the consideration for the sale. It is an obligation absolutely owing, independent of the sale out of which it arose; and any agreement for its extension can be regarded as one relating not to the consideration of the sale, but to an independent obligation, and therefore constituting a 'forbearance of a debt,' within the meaning of the usury laws." (*Id.,* at p. 1111.)

■ Appellant's contention that the interest provision represents part of a bona fide sale transaction is not well taken. The bona fide sale principle has its genesis in the Supreme Court decision of *Verbeck* v. *Clymer* (1927) 202 Cal. 557, 563 [261 P. 1017], where it was stated: " 'The first element of a usurious transaction is that there be a loan or forbearance of money. . . .' On principle and authority, the owner of property . . . has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices. . . ." This concept recently reiterated by the Supreme Court (*Boerner* v. *Colwell Co., supra,* 21 Cal.3d 37) has been repeatedly recognized in the cases cited by appellant. (See e.g., *Rose* v. *Wheeler* (1934) 140 Cal.App. 217, 222 [35 P.2d 220]; *Milana* v. *Credit Discount Co.* (1945) 27 Cal.2d 335, 340 [163 P.2d 865, 165 A.L.R. 621].)

However, the instant transaction was not a "credit sale"; rather, it was a cash sale, with the principal due within 10 days of receipt of the invoice. If the buyer chose to pay on time, he received a 2 percent discount; if not, the principal was subject to an overdue finance charge of 1½ percent per month. This additional finance charge cannot be construed as a part of the sale price. The finance charge was added on after maturity of the debt. It is simply an assessment made by the seller in consideration for his "waiting to collect a debt," a debt which is undisputedly fully matured and owing. This is far different from the situation referred to in *Verbeck* where, instead of calling for a lump sum payment, the contract names a sale price and specifies that it shall be paid over a period of time at a particular rate of interest. (202 Cal. at p. 563.)[2]

■ Appellant's other contention, that no forbearance occurred because it never *agreed* to provide further time for payment, is not reconcilable with the record. Appellant's own invoices and sales orders plainly state that "A FINANCE CHARGE OF 1½% PER MONTH (ANNUAL PERCENTAGE RATE OF 18%) WILL BE MADE ON ALL OVERDUE ACCOUNTS." It can hardly be asserted that such language did not constitute an implied agreement to give further time for payment in exchange for an 18 percent surcharge on the principal.

---

[2]The Attorney General's opinion contained in 43 Ops. Cal. Atty. Gen. 196 (1964) plainly fails to recognize this distinction. We therefore decline to follow it.

■ ■ Although the trial court's judgment was correct as far as it resolved the issues presented to it, recent California cases have viewed "late charge" provisions such as the one before us not as interest, but as liquidated damage clauses.

In the present case, no assertion was made below that the subject provision constituted anything other than interest, the points of dispute being whether such interest fell within the parameters of the usury laws. ■ However, it is recognized that, where the question is one of law alone, an appellate court is not bound by concessions of counsel; nor are we constrained by the interpretation of documents made by the trial court without the aid of extrinsic evidence. (*Amer. Auto. Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 200 [318 P.2d 84].) ■ If we examine the provision in question closely, it appears to be an attempt to assess liquidated damages. In *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39], the Supreme Court held that a certain late-charge provision was a liquidated damage clause, subject to sections 1670 and 1671.[3] The following language used by the court is especially pertinent herein: "when it is manifest that a contract expressed to be performed in the alternative is in fact a contract contemplating but a single, definite performance with an additional charge contingent on the breach of that performance, the provision cannot escape examination in light of pertinent rules relative to the liquidation of damages. (*Paolilli* v. *Piscitelli* (1923) 45 R.I. 345, 359 [121 A. 531]; Williston on Contracts (3d ed.) § 781.)" (*Garrett, supra,* at p. 738.)

The sales orders and invoices in the present case contemplate a single performance, namely payment in full within 10 days of delivery, and assess an additional charge in the event of the purchaser's nonperformance. Since the interest charge is assessed only upon default, under *Garrett* it is invalid unless it meets the requirements of sections 1670 and 1671. (*Id.*) The validity of a liquidated damages provision requires that the parties to the contract "agree therein upon an amount which shall be

---

[3]Section 1670 of the Civil Code provides: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

Section 1671 of the Civil Code provides: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

presumed to be the amount of damage sustained by a breach thereof." (§ 1671.) "This amount must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." (*Garrett, supra,* 9 Cal.3d at p. 739.)

The parties herein did not agree to any amount which would represent fair compensation to appellant as the result of the Nachtsheim's failure to make timely payments for shipments of lumber. So far as the record shows, appellant did not consult with Nachtsheim concerning overdue charges. Appellant merely sent a sales order and invoice with each shipment, unilaterally notifying Nachtsheim of a "finance charge" in the event of nonpayment within 10 days. Because the parties made no attempt to agree on any amount which would "estimate a fair average compensation for any loss that may be sustained" (*Better Food Mkts.* v. *Amer. Dist. Teleg. Co.* (1953) 40 Cal.2d 179, 186-187 [253 P.2d 10, 42 A.L.R.2d 580]), the clause fails to meet the requirements of sections 1670 and 1671; and it is not necessary for us to deal with the issues of "difficulty" or "impracticability" of estimation in advance. (*Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn., supra,* 9 Cal.3d 731, 738.) ▮ Therefore, the subject provision was void also as a penalty in violation of Civil Code sections 1670 and 1671.

The judgment is affirmed.

Caldecott, P. J., and Christian, J., concurred.

A petition for a rehearing was denied September 8, 1978, and appellant's petition for a hearing by the Supreme Court was denied October 12, 1978.