**In re PILLON–DAVEY & ASSOCIATES,
a California general partnership,
Debtor.**

**PILLON–DAVEY & ASSOCIATES, a
California general partnership,
Counter-Claimant,**

**v.**

**CONTRA COSTA WATER DISTRICT,
Counter-Defendant.**

**Bankruptcy No. 482–04016H.
Adv. No. 483–1567AH.**

United States Bankruptcy Court,
N.D. California.

May 10, 1985.

William McGrane, Glen P. Zwang, McGrane & Martin, San Francisco, Cal., for Pillon-Davey.

Frederick Bold, Jr., Bold & Polisner, Walnut Creek, Cal., for Contra Costa Water District.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge (Visiting).

Contra Costa County Water District ("CCWD") filed a proof of secured claim in the Chapter 11 case filed by Pillon-Davey & Associates ("Pillon-Davey"). Pillon-Davey filed an objection to the claim and a counterclaim alleging that the total interest claimed by CCWD is usurious, thus relieving Pillon-Davey from any obligation to pay the interest and entitling Pillon-Davey to judgment against CCWD in the amount of treble the amount of the interest paid. This matter comes before the Court on a motion for summary judgment filed by CCWD and a cross-motion for summary judgment filed by Pillon-Davey.

## FACTUAL BACKGROUND

In 1977 CCWD granted Jacque C. Pillon an option to purchase 2.37 acres of real property ("the real property"). On January 1, 1979, at the request of Mr. Pillon, CCWD conveyed title to the real property to Pillon-Davey. The purchase price was $593,614. CCWD gave Pillon-Davey a credit of $42,000 against the purchase price for sums paid in consideration of the option, leaving a balance of $551,614 due for the purchase. On January 1, 1979, Pillon-Davey executed a note in the amount of $551,614, payable to CCWD on December 31, 1981, bearing interest at 10% per annum. Payment of the note was secured by a trust deed on the real property.

CCWD later agreed to extend the due date on the 1979 note until December 31, 1982. The parties memorialized the extension agreement on December 31, 1981, when Pillon-Davey executed three documents—a promissory note in the amount of $600,000, a Notice of Advance Under Deed of Trust, and a receipt for $48,386. The effect of the three documents was to extend the due date by one year, to increase the principal balance to $600,000 and the interest rate on the principal balance to 16% per annum. The $551,614 principal balance was increased to $600,000 as a result of the addition of $13,903.69 in ac-

crued interest and $34,482.31 as consideration for the one year extension.

On October 22, 1982, Pillon-Davey filed a petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.). In January, 1984, Pillon-Davey sold the real property for $1,775,000 and paid CCWD $565,000.

## ISSUES

1. Is the 1981 note executed by Pillon-Davey subject to California's usury laws?

2. If so, is Pillon-Davey relieved of any obligation to pay additional interest?

3. If so, is Pillon-Davey entitled to judgment for treble the $34,482.31 which was added to the principal balance as consideration for the one year extension in the date when payment was due?

## LEGAL ANALYSIS

A. *Applicability of Usury Statute to the 1981 Note.*

California law controls whether the interest provided by the 1981 note is usurious since the parties entered into the contract in California, the parties are California residents, and the dispute involves real property located in California. See *S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.,* 641 F.2d 746 (9th Cir.1981). California's usury law provides:

The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum, but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest:

.    .    .    .    .

(2) ... [A]t a rate not exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks....

No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.

Cal.Const. art. XV, § 1.

To be subject to the usury law, an obligation must be either a "loan or forbearance of any money, goods or things in action". California courts have consistently held that bona fide credit sales of property are not subject to the usury law.

"On principle and authority, the owner of property, whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense ..." *Verbeck v. Clymer,* 202 Cal. 557, 563, 261 P. 1017, (1927), quoting 27 R.C.L. pgs. 213, 215, §§ 14, 15.

It has long been the law in this jurisdiction, as well as in the vast majority of other jurisdictions, that a bona fide credit sale is not subject to the usury law because it does not involve a 'loan' or 'forbearance' of money or other things of value. *Boerner v. Colwell Co.,* 21 Cal.3d 37, 45, 145 Cal.Rptr. 380, 577 P.2d 200 (1978).

CCWD argues that the 1981 transaction is part of a bona fide credit sale and thus exempt from the scope of the usury statute. CCWD's argument must fail for two reasons. First, in 1981 there could be no credit sale since CCWD had nothing to sell Pillon-Davey. Pillon-Davey owned the real property, subject to the beneficial trust deed interest of CCWD. CCWD was in no position to negotiate, or renegotiate, the sale of the property. It had transferred title in the property to Pillon-Davey in 1979. The only interest CCWD had in the property was as the beneficiary under a deed of trust, entitling it to foreclose upon the property if Pillon-Davey defaulted on

the underlying note. Thus, the only thing it had to 'sell' in 1981 was its right to foreclose.

■ The second reason CCWD's argument that the 1981 transaction falls within the credit sale exception must fail is that the parol evidence rule precludes this Court from considering affidavits submitted by CCWD as proof that the essence of the December 31, 1981 transaction was a reconveyance of the real property by Pillon-Davey to CCWD and a resale of the real property by CCWD to Pillon-Davey. The 1981 note unambiguously states that the 1979 trust deed is to remain in force and serve as security for the 1981 note. That language clearly indicates that the parties did not intend the 1981 transaction to affect the title and relative ownership interest in the property. Parol or extrinsic evidence is admissible only to clarify ambiguities in documents. It is not admissible to establish that the actual agreement was something other than that contained in the written instruments. "Parol evidence is not admitted to show that the appellants 'meant something other *than* what they said but by showing what they meant *by* what they said'". (emphasis in original)(citations omitted), *Larsen v. Johannes*, 7 Cal.App.3d 491, 501, 86 Cal.Rptr. 744, 749 (1970). See also, 30 Am.Jur.2d *Evidence* § 1065.

Any statement in the affidavits in conflict with that unambiguous construction of the note must be disregarded. "Extrinsic evidence inconsistent with any interpretation to which the instrument is reasonably susceptible becomes irrelevant; as a matter of substantive law such evidence cannot serve to create or alter the obligations under the instrument." *Tahoe National Bank v. Phillips*, 4 Cal.3d 11, 23, 92 Cal. Rptr. 704, 480 P.2d 320, 330 (1971).

The only ambiguity in the documents executed in 1981 is what the parties intended by their reference to "future advances", which the note indicates were consolidated with the amounts due under the promissory note dated January 1, 1979, to make up the $600,000 face amount of the 1981 note.

The evidence on this point is the note itself, and a letter of receipt, dated December 30, 1981, acknowledging "receipt from Contra Costa Water District of $48,386.00, in the form of credits to our account as follows: .... $34,482.31 as consideration for extending to December 31, 1982 the time of payment of the purchase price of the real property in Concord known as Hollar Field." (Exhibit 6, attached to the Declaration of David Ziegler, dated April 11, 1984.)

■ The clear import of this evidence is that the parties agreed that Pillon-Davey would have another year to pay the amounts due under the 1979 note, and in exchange, would pay an additional $34,-482.31 for that extension. That construction appears to place this agreement squarely within the definition of forbearance in California's usury law as construed by the California Courts.

The California Courts have defined a "forbearance" as "the giving of further time for the repayment of an obligation or an agreement not to enforce a claim at its due date." *Patterson v. Sprinkel*, 21 Cal. App.3d 261, 98 Cal.Rptr. 400 (1971), and "a waiting to collect the debt, or an agreement not to insist upon payment at the date of maturity", *Calimpco, Inc. v. Warden*, 100 Cal.App.2d 429, 440, 224 P.2d 421, 429 (1950).

CCWD argues that the term forbearance is the giving of additional time to perform an obligation originally arising as a loan. CCWD goes on to argue that forbearance of an action to enforce a purchase money security interest in real property where there can be no recovery of a money judgment is not within the scope of the term forbearance as used in the usury statute. The problem with the definition of the term forbearance which CCWD urges the Court to adopt is that it is contrary to the plain wording of the statute. Usury arises when there is an exessive rate of interest in connection with "... *any* loan or forbearance of *any* money, goods or things in action ...". Cal.Const. art. XV, § 1 (emphasis added). The statute makes no distinction between forbearance on different

types of obligations. The remedy which would have been available if the forbearance agreement had not been reached is irrelevant to the issue of usury. The purpose of the usury law is to prohibit creditors from charging an excessive interest rate in consideration of loans or forbearance agreements. This purpose will not be achieved if the term forbearance is limited to certain types of forbearance agreements.

At least one California case, *Crestwood Lumber Co. v. Citizens Savings and Loan Association*, 83 Cal.App.3d 819, 148 Cal. Rptr. 129 (1978), has implicitly rejected CCWD's position that interest paid in consideration of an agreement to forbear from collecting sums due from a credit sale cannot be usurious. The plaintiff in the *Crestwood* case was a lumber company selling products on a cash basis, with a finance charge imposed on all overdue accounts, and was suing defendant on one of its overdue accounts. The defendant argued that the finance charge violated California's usury law, in that it was a forbearance and the finance charge exceeded the maximum statutory allowance. The Court agreed with the defendant, rejecting plaintiff's contention that the additional finance charge was a part of the sales price. Instead, the Court held that it "simply is an assessment made by the seller in consideration of his 'waiting to collect a debt'", *Id.* at 825, 148 Cal.Rptr. 129, and therefore was subject to the usury statute. By applying the usury law to a case where the underlying debt was not a loan, but rather a cash sale, the Court necessarily construed the term forbearance as including the giving of additional time to repay obligations other than loans.

Decisions in other jurisdictions with usury statutes similar to California have explicitly held that agreements extending time to perform under credit sale agreements are forbearances, subject to usury restrictions, *London v. Toney*, 263 N.Y. 439, 189 N.E. 485 (1934); Annot., 91 A.L.R. 1105 (1934).

CCWD relies on the case of *Boerner v. Colwell Co.*, 21 Cal.3d 37, 145 Cal.Rptr. 380, 577 P.2d 200 (1978) in support of its position that the usury statute is not applicable to agreements to forbear from collecting sums due under a credit sale. The *Boerner* case is factually distinguishable from the case before this Court. The case involved a situation where certain builders agreed to sell each of the plaintiffs a vacation home on a credit sale basis. The builders then assigned their rights in the credit sales contracts to the defendant, a mortgage banking firm. The assignments occurred pursuant to a pre-agreed arrangement between the builders and the defendant. The issue before the Court was whether the essence of the transaction was a loan by defendant to each of the plaintiffs, rather than a credit sale by the builder to plaintiffs. The *Boerner* case did not deal with the question of whether an agreement to forbear collecting sums due under a credit sale agreement is subject to the usury law limitations.

■ CCWD's final argument is that good faith and lack of intent to circumvent the law have a bearing on the issue of whether usury has occurred. These elements are significant only "... where a contract is *not* usurious as a matter of law ..." *Arneill Ranch v. Petit*, 64 Cal. App.3d 277, 289, 134 Cal.Rptr. 456, 463 (1977)(emphasis added). The following are examples of contracts not usurious as a matter of law:

(1) Contracts where interest contingently payable might exceed the maximum legal rate because of factors beyond either parties' control. *Arneill Ranch v. Petit, Id.*

(2) Notes which are not usurious on their face, but which are transferred notes at a discount. *Glaire v. La Lanne-Paris Health Spa, Inc.*, 12 Cal.3d 915, 117 Cal. Rptr. 541, 528 P.2d 357 (1974).

If the interest rate provided on the face of documents exceeds the legal rate,

> ... a conscious attempt to evade the usury laws need not be proved. Usury may be found where there has been nothing more than knowing receipt of sums

above the legal rate of interest. *Fox v. Peck Iron & Metal Company, Inc.*, 25 Bankr. 674, 690 (Bankr.S.D.Cal.1982).

The evidence before the Court is that CCWD acted in good faith and without intent to evade the usury law when it entered into the 1981 transaction. Such good faith and lack of intent is not a defense to the Debtor's usury claim in this case.

The essence of the 1981 transaction is clear. Pillon-Davey agreed to pay CCWD $34,482.31 plus 16% interest on the unpaid purchase price in exchange for CCWD agreeing to forbear from foreclosing upon CCWD's interest in the real property.

In determining whether a loan or forbearance contains a usurious rate of interest, Courts include as interest all additional consideration exacted for the extension to perform. For example, in *Moore v. Russell*, 114 Cal.App. 634, 300 P.479 (1931) defendant had advanced $4,250 to plaintiff in exchange for a $5,000 promissory note. The Court found the difference of $750 to be interest, subject to scrutiny under the usury statute. In *Patterson, supra*, 98 Cal.Rptr. at 406, the Court notes that "(g)enerally any compensation, remuneration or other benefit exacted by a lender as a part of a loan or forbearance transaction is interest and will render usurious a loan made at the maximum interest rate."

In this case, the total interest assessed for agreeing to an extension to purchase the property includes the 16% assessed on the $600,000, plus the $34,482.31 difference between the amount owed on the date the extension was granted and the face amount of the 1981 note. Pillon-Davey computed this as being a 22% interest rate, well above the 17% allowed by law at the time the 1981 note was executed. CCWD does not dispute Pillon-Davey's mathematical computation or contention that 17% was the maximum allowed by law at the time the 1981 note was executed. Thus, the 1981 transaction between CCWD and Pillon-Davey violated the usury law.

B. *Obligation of Pillon-Davey to Pay Additional Interest.*

Pillon-Davey assets that the usurious aspect of the December 31, 1981 extension agreement relieves it of any obligation to pay interest accruing after December 31, 1981.

The consequences of including a usurious interest provision in a note has been described as follows:

> The attempt to exact the usurious rate of interest renders the interest provisions of a note void. (*Moore v. Russell*, 114 Cal.App. 634, 300 P. 479; *Simmons v. Patrick*, 211 Cal.App.2d 383, 27 Cal.Rptr. 347.) The usurious provisions, however, do not affect the right of the payee to recover the principal amount of the note when due. (*Rochester Capital Leasing Corp. v. K & L Litho Corp.*, 13 Cal. App.3d 697, 91 Cal.Rptr. 827.) The inclusion of a usurious interest provision, therefore, results, in effect, in a note payable at maturity *without interest* (emphasis added).

The payee of a non interest-bearing note is entitled to interest at the legal rate from the date the note matures until the date of judgment. (*Puppo v. Larosa*, 194 Cal. 717, 230 P. 439.) In such instances interest is awarded in the nature of damages for the retention of the principal amount of the note and not by virtue of any provision in the note. By analogy, therefore, the payee of a note with a usurious interest provision would be entitled to damages in the nature of interest at the legal rate for that period of time which the obligor on the note withheld the principal beyond the date of maturity. *Epstein v. Frank*, 125 Cal. App.3d 111, 122–123, 177 Cal.Rptr. 831, 857 (1981).

*See also, Fox v. Peck Iron & Metal Co., Inc.*, 25 B.R. 674, 693 (Bankr.S.D.Cal.1982).

██ Although Pillon-Davey is relieved of its obligation to pay the $34,482.31 bonus and interest on the terms set forth in the December 31, 1981 promissory note, it is obligated to pay CCWD interest at the legal rate on the $565,517.69 principal balance from December 31, 1982, the date the note matured, until the date of payment or judgment, whichever is earlier.

C. *Right of Pillon-Davey to Treble Damages.*

Pillon-Davey seeks an award of treble the $34,482.31 which was added to the principal balance as consideration for the one-year extension in the date when payment was due.

The Court is given authority to award treble damages under Cal.Civ.Code § 1916–3(a)(West Supp.1985), which provides:

> (a) Every person, company, association or corporation, who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections, one and two, may either in person or his or its personal representative, recover in an action at law against the person, company, association or corporation who shall have taken or received the same, or his or its personal representative, treble the amount of the money so paid or value delivered in violation of said sections, providing such action shall be brought within one year after such payment or delivery.

The award of treble damages is within the trial court's discretion. *Burr v. Capital Reserve Corp.,* 71 Cal.2d 983, 80 Cal.Rptr. 345, 458 P.2d 185 (1969), *Buck v. Dahlgren,* 23 Cal.App.3d 779, 100 Cal.Rptr. 462 (1972). In exercising its discretion, the Court is to consider the background of the parties and their role in structuring the usurious transaction. The obligee should not be allowed to reap the benefits of the treble damages provision if the obligee had a knowing and active role in the usury. *Fox v. Peck Iron & Metal Company, Inc., supra,* 25 B.R. at 692.

■ Pillon-Davey's claim for treble damages must fail for several reasons. First, Pillon-Davey did not pay the $34,482.31 as that term is used in the relevant statute. California courts have long held that the inclusion of a bonus in the principal balance of a note does not constitute payment for purposes of determining treble damages. *Courtney v. Tufeld,* 128 Cal.App. 504, 17

P.2d 1035 (1932). *Anderson v. Lee,* 103 Cal.App.2d 24, 228 P.2d 613 (1951).

■ The second reason that Pillon-Davey's claim for treble damages must fail is that it did not bring its action "within one year after such payment or delivery." Cal. Civ.Code § 1916–3(a). Pillon-Davey argues that it paid the bonus on December 31, 1981 when it executed the $600,000 promissory note. It filed its objection to claim and counterclaim in which it asserted its treble damages claim on December 27, 1983.

■ Even if Pillon-Savey had a potential legal right to treble damages, this Court would not in its discretion award treble damages. This case does not involve an unscrupulous operator attempting to take advantage of an unwary and necessitous borrower. Both parties to the transaction were sophisticated business entities. Pillon-Davey played an active role in the negotiation and structuring of the loan extension agreement.

In summary, the Court finds that CCWD's amended proof of claim is disallowed in the following respects:

(1) The balance of principal must be reduced to $517.69 ($35,000 claimed—$34,482.31 disallowed as usurious).

(2) The interest claim is limited to the legal rate of interest on $565,000 from December 31, 1982 through January 17, 1984, and the legal rate of interest on $517.69 from December 31, 1982 until the date judgment is entered in this matter.

Pillon-Davey should submit an appropriate Judgment Order.