[No. H004798. Sixth Dist. Mar. 7, 1990.]

MARY ELLEN O'CONNOR, as Trustee, etc., Plaintiff and Respondent, v.
TELEVIDEO SYSTEM, INC., Defendant and Appellant.

COUNSEL

Mark G. Bonino, Charles M. Marx and Ropers, Majeski, Kohn, Bentley, Wagner & Kane for Defendant and Appellant.

James Paul Green for Plaintiff and Respondent.

OPINION

ELIA, J.—Appellant Televideo System, Inc., appeals from a judgment awarding respondent Mary Ellen O'Connor, as assignee of the claim of

Pousto Corporation, $43,800 plus finance charges of $21,024, calculated at 18 percent per annum from August 1985 through April 30, 1988. Televideo's sole point on appeal is that the finance charges violated the prohibition against usury. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Pousto, a computer circuit board assembly house operating under the name of Unitronic, performed assembly work for Televideo, a computer manufacturer. After the work was complete, Pousto would send invoices to Televideo which stated that the amount due should be paid within 30 days. The invoices also provided that "All past due accounts are subject to a late charge of 1½% per month or 18% per annum."

During the course of this business relationship, a dispute arose concerning the amount of money Televideo owed to Pousto. Accordingly, on August 30, 1985, Pousto filed a complaint against Televideo for damages, account stated, goods sold and delivered, and open book account. The complaint alleged that Televideo was indebted to Pousto in the amount of $128,401.92, plus interest at the rate of 1½ percent per month.

On February 28, 1986, Televideo filed an answer to the complaint generally denying the allegations and raising the affirmative defense of payment.

The matter was tried without a jury and, on March 28, 1988, the court issued its decision. The court found that Televideo owed Pousto $43,800 for assembly work and also concluded that the parties had agreed to a charge of 1½ percent per month on the amounts past due, that the interest charge was reasonable, and thus Pousto was entitled to collect such interest.

Televideo filed a request for statement of decision to determine whether the finance charges assessed on the unpaid debt were usurious and barred by California law.

On May 6, 1988, the court filed its statement of decision. The court concluded that the finance charge represented a "time-price" differential, that the parties had agreed that a 1½ percent per month finance charge would be imposed on past due amounts, that the charge was commercially reasonable under the circumstances and that it was consistent with the existing practice between the parties.

At the August 5, 1988, hearing on Televideo's motion to tax costs, the court ordered that an amended judgment be filed nunc pro tunc to reflect that the finance charge was to be calculated at 18 percent per annum.

On September 1, 1988, an amended judgment was filed, finding Televideo indebted to Pousto for $43,800, along with finance charges at 18 percent per annum, totalling $21,024. This appeal ensued.

## DISCUSSION

■ Televideo states that the 1½ percent per month or 18 percent per annum charge assessed for late payment was usurious under article XV, section 1 of the California Constitution.[1] For reasons we shall state, we conclude that the charge is not subject to the usury law but instead constitutes a valid liquidated damages provision.

■ "Usury is the exacting, taking or receiving of a greater rate than is allowed by law, for the use or loan of money." (*Ross* v. *Wheeler* (1934) 140 Cal.App. 217, 222 [35 P.2d 220].) A transaction is usurious if there is a loan at greater than the legal rate of interest or an exaction at more than the legal rate for the forbearance of a debt or sum of money due. (*Id.* at p. 223.)

A loan of money is "a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed." (Civ. Code, § 1912.)   ■   A forbearance, on the other hand, is the giving of further time for the payment of a debt or an agreement not to insist upon payment at the due date. (*Calimpco, Inc.* v. *Warden* (1950) 100 Cal.App.2d 429, 440 [224 P.2d 421], overruled on other grounds in *Fazzi* v. *Peters* (1968) 68 Cal.2d 590, 591 [68 Cal.Rptr. 170, 440 P.2d 242].) Both a loan of money and a forbearance are to be distinguished from a sale which is "the transfer of property in a thing for a price in money." (*Milana* v. *Credit Discount Co.* (1945) 27 Cal.2d 335, 339 [163 P.2d 869, 165 A.L.R. 621].)

■ To determine whether a transaction is usurious, we must look to the substance rather than the form of the transaction. (*Boerner* v. *Colwell Co.* (1978) 21 Cal.3d 37, 44 [145 Cal.Rptr. 380, 577 P.2d 200].) The pivotal question is "whether or not the bargain of the parties, assessed in light of all

---

[1] Article XV, section 1 of the California Constitution states in pertinent part: "The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract for a rate of interest: . . . [¶] (2) For any loan or forbearance of any money, goods, or things in action for any use other than specified in paragraph (1), at a rate not exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act as now in effect or hereafter from time to time amended . . . ."

the circumstances and with a view to substance rather than form, has as its true object the hire of money at an excessive rate of interest." (*Ibid*; *Burr* v. *Capital Reserve Corp.* (1969) 71 Cal.2d 983, 989 [80 Cal.Rptr. 345, 458 P.2d 185].)

■ One principle which may render the usury laws inapplicable is that a debtor by voluntary act cannot render an otherwise valid transaction usurious. "[A] debtor cannot bring his creditor to the penalties of the Usury Law by his voluntary default in respect to the obligation involved where no violation of law is present at the inception of the contract." (*Sharp* v. *Mortgage Security Corp.* (1932) 215 Cal. 287, 291 [9 P.2d 819].) As stated in *Penziner* v. *West American Finance Co.* (1933) 133 Cal.App. 578, 590 [24 P.2d 501], "Where the excessive interest is caused by a contingency under the lender's control, or not under the borrower's control, the transaction is usurious; [it is] otherwise when the contingency is under the borrower's control." (See also *French* v. *Mortgage Guarantee Co.* (1940) 16 Cal.2d 26, 33 [104 P.2d 655, 130 A.L.R. 67]; *Abbot* v. *Stevens* (1955) 133 Cal.App.2d 242, 247 [284 P.2d 159]; *First American Title Ins. & Trust Co.* v. *Cook* (1970) 12 Cal.App.3d 592, 596 [90 Cal.Rptr. 645].)

■ Another exception to the usury laws is the "time-price" doctrine. This doctrine applies when property is sold on credit as an advance over the cash price. In these circumstances, the seller finances the purchase of property by extending payments over time. This type of transaction, often called a bona fide credit sale, is not subject to the usury law because it does not involve a loan or forbearance. (*Boerner* v. *Colwell Co., supra*, 21 Cal.3d at p. 45; *Verbeck* v. *Clymer* (1927) 202 Cal. 557, 563 [261 P. 1017].) The exception was explained in *Verbeck* : " 'On principle and authority, the owner of property, whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense; . . .' " (*Verbeck* v. *Clymer, supra*, 202 Cal. at p. 563, citing 27 R.C.L., pp. 213-215, §§ 14, 15.)

In *Fox* v. *Federated Department Stores, Inc.* (1979) 94 Cal.App.3d 867 [156 Cal.Rptr. 893], the court relied upon both the time-price doctrine and the principle that a debtor's voluntary default cannot make an otherwise valid transaction usurious. In *Fox*, retail department stores and oil companies imposed monthly charges of 1 to 1½ percent on unpaid account balances. The plaintiffs, who were purchasers of goods and services, argued that such charges constituted usury and that the Unruh Act, which allowed

finance charges in excess of the limit imposed by article XV, was unconstitutional.

The court decided that a "time-price" or "finance charge" in a bona fide sale of goods or services was not a form of interest within the meaning of article XV section one. It further held that the sales by the defendants of their goods and services constituted bona fide sales to which the "time-price" doctrine applied. (*Fox* v. *Federated Department Stores, Inc., supra,* 94 Cal.App.3d at p. 872.) The court also determined that the Unruh Act was constitutional.

The court determined that the nonrevolving credit plan for oil company credit card users was not usurious for a second reason. The plan, which required that the bill be paid when rendered, only imposed a finance charge if payment was late. As a consequence, "[s]ince the contract at its inception does not require a usurious payment, and it is only because of the customer's voluntary act in failing to make the payment when due that a finance charge is levied, under applicable law such charge cannot be usurious. [Citations.]" (*Fox* v. *Federated Department Stores, Inc., supra,* 94 Cal.App.3d at p. 884.)

A contrary result was reached in *Crestwood Lumber Co.* v. *Citizens Sav. & Loan Assn.* (1978) 83 Cal.App.3d 819 [148 Cal.Rptr. 129], and *Mark McDowell Corp.* v. *LSM 128* (1989) 214 Cal.App.3d 1427 [263 Cal.Rptr. 310]. Both these cases determined that the charges assessed violated the prohibition against usury.

In *Crestwood,* the court concluded that an annual service charge of 18 percent in a nonconsumer goods transaction was usurious. The invoices and sales orders in *Crestwood* included a 2 percent discount for payments made within 10 days and a finance charge of 1½ percent (18 percent per year) on payments made after 10 days.

The court concluded that the charges were unenforceable. First, the billing practice constituted interest charged on the forbearance of money and was therefore subject to California's usury laws. Because the rate imposed exceeded the limits set forth in article XV, section 1, the charges were void. In particular, the court reasoned that the transaction was a cash sale (as opposed to a credit sale) because the principal was due within 10 days of receipt of the invoice. The monthly 1½ percent finance charge assessed if payment was late was not part of the sale price because it was added on after maturity of the debt. Instead, it was "simply an assessment made by the seller in consideration for his 'waiting to collect a debt,' a debt which is undisputedly fully matured and owing." (*Crestwood Lumber Co.* v. *Citizens*

*Sav. & Loan Assn., supra,* 83 Cal.App.3d at p. 825.) According to the court, the transaction was not subject to the time-price doctrine because it called for a lump sum payment rather than naming a sales price and specifying that it be paid over a period of time. (*Ibid.*)

The *Crestwood* court also invalidated the charges on the ground that they constituted a penalty. The court determined that the charges violated the liquidated damage provisions of former California Civil Code sections 1670 and 1671 because the parties did not agree to any amount which would "'estimate a fair average compensation for any loss that may be sustained.'" (*Crestwood Lumber Co.* v. *Citizens Sav. & Loan Assn., supra,* 83 Cal.App.3d at p. 827, quoting *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 739 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39].)

In *Mark McDowell Corp.,* the court considered whether a construction contract, which stated that sums not paid when due should bear interest at a rate of 1½ percent per month, was usurious. Citing *Crestwood,* the court determined that the transaction was usurious because the finance charge was added after the maturity of the debt. The court distinguished *Fox* v. *Federated Department Stores, Inc., supra,* 94 Cal.App.3d 867, because *Fox* involved credit card sales sanctioned by section 1810.2 of the Unruh Act and "[i]n light of the specific statutory sanction for such transactions, *Fox* has no bearing on the present case." (*Mark McDowell Corp.* v. *LSM 128, supra,* 214 Cal.App.3d at p. 1431.)

We decline to follow the decisions in *Crestwood* and *Mark McDowell Corp.* and instead hold that the transaction in this case was not usurious. The reasons for our conclusion are set forth below.

First, both *Crestwood* and *Mark McDowell Corp.* failed to apply, or even discuss, the principle that a transaction not usurious at its inception cannot become usurious by virtue of the debtor's voluntary default. This precept has been expressed in a number of California cases. (*Sharp* v. *Mortgage Security Corp., supra,* 215 Cal. at p. 291; *Penziner* v. *West American Finance Co., supra,* 133 Cal.App. at p. 590; see also *French* v. *Mortgage Guarantee Co., supra,* 16 Cal.2d at p. 33; *Abbot* v. *Stevens, supra,* 133 Cal.App.2d at p. 247; *First American Title Ins. & Trust Co.* v. *Cook, supra,* 12 Cal.App.3d at p. 596; *Fox* v. *Federated Department Stores, supra,* 94 Cal.App.3d at p. 884.) It has also been recognized by numerous other authorities. (See, e.g., 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 487, p. 434; 47 C.J.S., Interest & Usury § 140, p. 257; *Scientific Products* v. *Cyto Medical Laboratory, Inc.* (D.Conn. 1978) 457 F.Supp. 1373, 1379; *Rangen, Inc.* v.

*Valley Trout Farms, Inc.* (1983) 104 Idaho 284 [658 P.2d 955, 960]; *Union Bank* v. *Kruger* (1969) 1 Wn.App. 622 [463 P.2d 273, 276].)

Applying this rule to the facts here demonstrates that the transaction was not usurious. Pousto's invoices stated that "All past due accounts are subject to a late charge of 1½% per month or 18% per annum." Thus, the charge was added only if Televideo did not make timely payment. Accordingly, the 1½ percent monthly charge was a contingency solely within Televideo's control and therefore the provision cannot be deemed usurious.

A second reason why this transaction is not usurious is that there was no forbearance. As previously noted, a forbearance is the giving of further time for payment of a debt or an agreement not to insist upon payment at the due date. (*Calimpco, Inc.* v. *Warden, supra*, 100 Cal.App.2d at p. 440, quoting 11 Cal.Jur. 10-yr. Supp. 112.)

Does the invoice statement "All past due accounts are subject to a late charge of 1½% per month or 18% per annum" constitute a forbearance? We do not think so. Pousto did not agree to forego its right to collect the money immediately. It only stated that a penalty would be imposed if it was made to wait. If the invoice truly constituted an agreement to give further time for payment in exchange for an 18 percent surcharge on the principal, then the buyer could conceivably forbear ad infinitum, so long as the finance charge was paid, and the creditor could never recover the principal. The creditor would never be able to sue to collect the money past due because it was receiving consideration for its agreement to forbear on the account. (Cf. Loomis, *Crestwood Lumber Company* v. *Citizens Savings & Loan Association: The Usury Law and Liquidated Damages in Sale of Goods Transactions* (1979) 10 Golden Gate L.Rev. 553, 563-564; *Rangen, Inc.* v. *Valley Trout Farms, Inc., supra*, 658 P.2d at p. 960.)

Common sense tells us that the invoice provision cannot be interpreted in such a manner and that this was not the substance of the transaction entered into between appellant and respondent. Indeed, Pousto, by filing suit, has not recognized an agreement to forbear but has acted to recover the amounts owed. Pousto's conduct in bringing suit also negates a finding, such as in *Crestwood,* that the terms of the invoice constituted an implied agreement to forbear. (See Civ. Code, § 1621.)

Third, we cannot distinguish *Fox*, as the court in *McDowell* did, simply because *Fox* involved the Unruh Act. While it is true that the Unruh Act applies to consumer goods, and also true that this case involves nonconsumer goods, it is also quite plain that the *Fox* court specifically found, apart from the Unruh Act, that the time-price doctrine and debtor's control over

whether the late charge was assessed, established that the transactions were *not usurious. These principles are no less applicable simply because a transaction* involves nonconsumer goods.

Finally, we note that the purpose of the usury law supports our conclusion that this transaction was not usurious. The usury laws were enacted primarily to "protect the indigent, who are helpless to protect themselves in a practical sense, . . ." (*Wooten* v. *Coerber* (1963) 213 Cal.App.2d 142, 148 [28 Cal.Rptr. 635].) This is not the situation here. In this case, we have two companies with relatively equal bargaining power, evidently dealing at arm's length with each other, and freely agreeing to use an invoice form which is commonplace in these types of transactions. Moreover, there is no suggestion that the terms of the invoices were a subterfuge for an intent to evade the usury laws. Accordingly, we conclude that the transaction is not usurious because (1) it was not usurious at its inception but only became so if the debtor did not make timely payment and (2) there was no forbearance as required by article XV, section 1 of the California Constitution.

■ Having determined *that the terms of the invoices were not subject to* the usury laws, we now consider whether the finance charge was an invalid liquidated damage provision or penalty within the meaning of Civil Code section 1671 and former Commercial Code section 2718.

Civil Code section 1671, subdivision (b) states in pertinent part: "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

Former California Uniform Commercial Code section 2718 provides in part: "Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy." When section 2718 is read in conjunction with section 1671, it is clear that Televideo must establish that the charge was unreasonable before we can conclude that it should be invalidated.

However, Televideo has wholly failed to establish that the charge was unreasonable under the circumstances existing at the time it was made. Moreover, the trial court, in its statement of decision, expressly found that the charge was reasonable under the circumstances and had been agreed to by both Pousto and Televideo. The fact that the parties agreed to the 1½ percent monthly charge is also established by California Uniform Commer-

cial Code section 2207, which provides that additional terms become part of the contract between merchants unless the person receiving them objects. (*Kawasho Internat., U.S.A., Inc.* v. *Lakewood Pipe Service, supra*, (1983) 152 Cal.App.3d 785, 792 [201 Cal.Rptr. 640]; see also Deering's Ann. Cal. U. Com. Code, § 2207 (1986 ed.) p. 75, official code comment 5.)

Accordingly, we conclude that the terms of the invoice calling for a 1½ percent charge per month or 18 percent charge per annum for late payment constituted a valid liquidated damage provision.

The judgment is affirmed.

Agliano, P. J., and Premo, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 31, 1990.