[Civ. No. 66258. Second Dist., Div. Three. Dec. 30, 1983.]

KAWASHO INTERNATIONAL, U.S.A., INC.,
Plaintiff and Respondent, v.
LAKEWOOD PIPE SERVICE, INC., Defendant and Appellant.

786

**COUNSEL**

Tilles & Webb and Norman S. Kulla for Defendant and Appellant.

Graham & James, Don A. Proudfoot, Jr., Stephen T. Owens and James H. Broderick, Jr., for Plaintiff and Respondent.

**OPINION**

**DANIELSON, J.—**

### FACTUAL AND PROCEDURAL BACKGROUND

*The Facts*

Plaintiff Kawasho International, U.S.A., Inc. (Kawasho) is a New York corporation doing business in California as a wholesaler of pipe which it imports from Japan. Lakewood Pipe Service, Inc. (Lakewood) is a corporation, engaged in the pipe business, and was a customer of Kawasho.

Commencing in 1974 Kawasho began to sell steel pipe products to Lakewood on open account. The sales were generally initiated by a telephone call from Lakewood to Kawasho at its Los Angeles office, followed by a written Lakewood purchase order, prepared by Lakewood, over the signature of Frank Tybus, Lakewood's president, which included definite payment terms, such as "Terms Net 60 days," or "Terms Net 90 days." Kawasho would then send Lakewood a confirming sales contract, prepared by Kawasho, setting forth the same payment terms which had been submitted by Lakewood, and terms additional to those proposed by Lakewood which generally related to packing and shipping. In addition, many Kawasho sales contracts (exhibits 22-28) contained the following provision: "Interest will be charged on all delinquent payments at the rate of 11% per annum from due date to actual date of payment."

On delivery of the pipe to Los Angeles, or in some instances to Lakewood's branch in Texas, Kawasho would notify Lakewood and would for-

ward sales invoices for the pipe delivered. The sales invoices contained payment terms identical to those of the relevant Lakewood purchase orders and Kawasho sales contracts.

Lakewood was almost invariably late in making its payments, often as late as eight to ten months overdue. Lakewood did eventually remit payment of the principal sums of the sales invoices, but did not pay the accrued interest on the overdue payments.

In February 1976, as Lakewood continued being late in payments, Kawasho began sending separate "interest invoices" to Lakewood, after receipt of the sales invoice amount, for the amount of the interest which had accrued during the delinquency periods. This practice continued through February 6, 1978, without producing payment. However, Lakewood did not protest, and Kawasho and Lakewood continued to do business as before, with Lakewood being delinquent in paying the invoices for the goods it purchased and not paying interest on the overdue payments.

Kawasho then commenced more vigorous efforts to collect the overdue interest by telephone calls, personal visits, and letters to Lakewood's offices. Kawasho's manager spoke personally with Anthony Valeri and Frank Tybus, vice president and president, respectively, of Lakewood, demanding payment; and at a March 29, 1978, meeting, Tybus acknowledged that he had received the invoices for interest and indicated that the late charges would be paid. Meanwhile, Kawasho had sent Lakewood itemized dunning letters for the overdue interest dated as follows: December 20, 1977, $96,018.62; March 28, 1978, $99,376.92; a second letter dated March 28, 1978, $75,759.41, calculated at the legal judgment rate of 7 percent per annum and proposing two optional installment payment plans; and April 5, 1978, also calculated at 7 percent, but offering a different installment payment plan. By letter dated April 13, 1978, Lakewood referred to Kawasho's proposed payment plan and said, "Since your company fails to see our side of the problem, we are not willing to continue discussions of the settlement of this matter."

The business relationship continued as before until at least May 1979. Kawasho's collection efforts produced *some* results, since Lakewood paid the amount of interest on at least 7 Kawasho interest invoices captioned "INTEREST ON PAST DUE PAYMENT," totalling $5,112.44 during the period from January 26 through May 17, 1979. Other interest invoices remained unpaid. Kawasho sent Lakewood a letter dated February 26, 1979, cancelling a Lakewood order "due to your delayed payments for our previous invoices"; and by letter dated April 13, 1979, Kawasho asked payment of

additional amounts of principal, and interest on delinquent payments, as specified therein. Lakewood paid those amounts and returned the letter to Kawasho with a note thereon, handwritten by Frank Tybus, reading, "Please do not come in for any more orders. F. W. Tybus."

*Litigation*

On July 29, 1980, Kawasho filed its complaint against Lakewood for $75,759.41, the amount of the alleged interest unpaid on the overdue accounts, with interest at 7 percent from the date of demand. The complaint pleaded four causes of action, with common counts for account stated, open book account, money paid, and a count "for interest on accounts after demand" under article XV, section 1, California Constitution. Lakewood answered with general denials of all allegations, and demanded a bill of particulars. The bill of particulars furnished by Kawasho was a copy of the letter of March 28, 1978, and its attached schedule of interest due at 7 percent referred to above.

Following discovery and immediately before trial, the court granted plaintiff Kawasho's application to dismiss the third cause of action, for money paid, and to reduce the amount of the demand of the complaint from $75,759.41 to $57,958.88. Trial was by the court on May 4-7, 1981, supplemental letter-briefs were submitted by the parties, and the court filed its notice of intended decision on June 10, 1981. Lakewood duly requested findings of fact and conclusions of law. After some problems and hearings for the purpose of settling the findings, the court made its findings on August 25, 1981, and made and entered its judgment on the same date for the plaintiff, Kawasho, in the sum of $29,487.64. Lakewood filed a timely appeal from the whole of the judgment.

*Calculation of Interest by the Court*

In calculating the amount of the judgment, the court specified, in its findings and conclusions, that it would award interest on the sales contracts and invoices (exhibits 22-28) which had specifically called for interest, stating that California Uniform Commercial Code section 2207 governs those sales invoices, and would also award interest on the invoices from February 25, 1976, forward in that the situation, relationship, and conduct of the parties established an implied-in-fact agreement by Lakewood to pay interest on its past due accounts with Kawasho after that date.

CONTENTIONS

In essence, defendant Lakewood contends on appeal that (1) the evidence was insufficient to support the judgment which was based on implied con-

tract; (2) the court misapplied the "notice of objection" provision of California Uniform Commercial Code, section 2207;[1] (3) the judgment based on implied contract must be reversed because plaintiff Kawasho pleaded common counts; (4) plaintiff Kawasho had waived its claims for interest; and (5) in any event, the amount of the judgment was miscalculated by the trial court and must be reduced.

An examination of the record and applicable law demonstrates that each and all of these contentions must fail.

### DISCUSSION

*1. The Evidence Supported the Trial Court's Findings and Judgment.*

██ Defendant's contention that the evidence was insufficient to support the court's judgment that there was an implied contract between the parties that Lakewood would pay interest on its overdue indebtedness to Kawasho, commencing in February 1976, is entirely without merit. Oral testimony before the court was in some respects conflicting, however, documentary evidence in support of the court's findings and judgment was very substantial. ██ We are guided by the firmly settled rule that a judgment must be upheld on appeal in the face of a challenge to the sufficiency of the evidence, if the judgment is supported by substantial evidence. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 816 [180 Cal.Rptr. 628, 640 P.2d 764].)

██ The existence and terms of an implied contract are manifested by the conduct of the parties. (Civ. Code, § 1621; see also, § 2207, subd. (3).) ██ The existence of an implied contract is a question of fact for the trial court, and where conflicting evidence is presented, a question of fact is for the decision of the trial court and that decision will not be disturbed on appeal in the absence of an abuse of discretion. (See *Medina v. Van Camp Sea Food Co.* (1946) 75 Cal.App.2d 551, 556 [171 P.2d 445].)

██ In the case at bench the evidence before the trial court, including the testimony of witnesses and documentary evidence, established a course of conduct and procedure between the parties consisting of purchase orders, sales contracts, invoices, special "interest invoices," letters, telephone and person-to-person conversations, and discussions which demonstrate and fully support the facts found by the court.

---

[1]All section references are to the California Uniform Commercial Code unless otherwise specified.

## 2. *Lakewood Did Not Fulfill the Notification Requirements of Section 2207.*

Lakewood next contends that the trial court misapplied the provisions of section 2207 in that the court concluded that Lakewood was "obliged to specifically object to the interest provisions contained" in the Kawasho sales contracts and invoices. Lakewood's contention is that Kawasho was "on notice" that Lakewood refused to pay interest and therefore Lakewood was not obligated to specifically object.

In pertinent part, section 2207 provides: "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms. [¶] (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: [¶] . . . (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

In the case at bench the sales contracts prepared by Kawasho and sent to Lakewood in response to Lakewood's purchase orders contained the terms of payment "net 60 days" (or 90 days) which had been set forth in Lockwood's purchase orders. In addition, many of Kawasho's sales contracts contained the specific additional terms that "interest will be charged . . . from due date to actual date of payment."

There was no evidence whatever that Lakewood ever notified Kawasho of any objection to that latter provision. Accordingly, by the very terms of section 2207, above, the additional terms calling for interest became part of the contract between the parties.

Further, we note that in awarding and calculating its judgment for interest, the trial court limited the award of interest given Kawasho to (1) those sales contracts expressly containing the "interest will be charged" clause, mentioned above, and (2) the invoices due beginning February 25, 1976, when Kawasho commenced intensified efforts to collect interest and clearly brought its demand to the attention of Lakewood. The court did not grant Kawasho's prayer for interest on other and earlier sales. That is why the original demand for $75,759.41 was reduced to $29,487.64 in the judgment.

At no time did Lakewood notify Kawasho of an objection to the interest until the dealings between the parties were terminated. Even then Lakewood had paid substantial sums of interest on some of the purchases. As the trial

court stated in its notice of intended decision, when the subject of interest came up in discussion between the parties Lakewood "simply stalled . . . [Lakewood's] claim of constant objection is not supported by the record."

3. *The Pleading of Common Counts by the Plaintiff Was Procedurally Proper.*

■ Lakewood contends that the judgment for Kawasho, based upon the court's conclusion that an implied-in-fact contract existed between the parties, requires reversal because Kawasho's complaint alleged only common counts. This contention is specious. The practice of pleading common counts in California has been too long established to be open to question. (*Pike* v. *Zadig* (1915) 171 Cal. 273, 276 [152 P. 923].) "[T]he common counts are sufficient to state a cause of action upon either a contract implied in fact [citations] or a contract implied in law." (*Weitzenkorn* v. *Lesser* (1953) 40 Cal.2d 778, 793 [256 P.2d 947]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 423, p. 2080 and following, and authorities collected there.) As Witkin states in his text, "A common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished. It makes no difference in such a case that the proof shows the original transaction to be an express contract, a contract implied in fact, or a quasi-contract." (*Id.*, at p. 2085.)[2]

4. *Kawasho Did Not Waive Its Right to Interest.*

Lakewood next contends that Kawasho waived its rights to interest, both as a matter or question of fact and as a matter or question of law. Again, Lakewood's contention is not supported by the record.

In its brief Lakewood first concedes that there were "elements of both implied agreement [to pay interest] and implied waiver in this case." Lakewood then argues that the court should have found that there was implied waiver. ■ We again point out, as in section 1, *ante,* that where there is conflict in the evidence the finding of the trial court will be upheld on appeal.

a. *There Was No Waiver of Interest by Kawasho as a Matter of Fact.*

■ A waiver is the voluntary and intentional relinquishment of a known right. It depends upon the intention of one party only. (*Morgan* v. *Inter-*

---

[2]We also note that the Judicial Council of California has recently approved an official form for pleading common counts. California Rules of Court, rule 982.1(d)(22).

*national Aviation Underwriters, Inc.* (1967) 250 Cal.App.2d 176, 180 [58 Cal.Rptr. 164].) There is no evidence whatever in the record that Kawasho ever relinquished its claim and right to interest. During the early dealings between the parties Kawasho was clumsy and ineffective in asserting its claim and right to interest, but Kawasho never relinquished or surrendered that right.

■ Whether or not a waiver has taken place is ordinarily a question of fact. (*Tas-T-Nut Co.* v. *Continental Nut Co.* (1954) 125 Cal.App.2d 351, 355 [270 P.2d 43].) Here the court expressly found that Kawasho made repeated demands for payment of the interest balance due from Lakewood and that that balance had not been paid. We have reviewed the record and find that there was substantial evidence to support that finding.

b. *There Was No Waiver of Interest by Kawasho as a Matter of Law.*

■ Lakewood also argues that since Kawasho had received payment of the principal on its sales to Lakewood, it had "waived" its claims for interest, as a matter of law, because of the provisions of Civil Code section 3290,[3] which provides: "Acceptance of principal waives claim to interest. Accepting payment of the whole principal, as such, waives all claim to interest."

Lakewood's argument reflects a misunderstanding of the application of section 3290, which is found in the article of the Civil Code which is entitled and relates to "Interest As Damages." Section 3290 applies only to situations where interest is claimed as *damages* for nonpayment or default in payment of a debt. Section 3290 does not apply to situations where the interest claimed is a part of the *debt,* that is, where the claim for interest is based upon a contract, express or implied, to pay interest.

Section 3290, enacted in 1872, has rarely been the subject of interpretation by our courts; probably because its application and meaning is clear. Our Supreme Court recognized the proper application of section 3290 in *Estate of Hubbell* (1932) 216 Cal. 574, at page 578 [15 P.2d 503], stating: "Nor do we think section 3290 of the Civil Code militates against appellant's claim for interest. That section . . . appears in that part of the Civil Code entitled 'Interest as Damages'. We are inclined to the view that interest is due on a legacy not as a penalty for nonpayment or default in payment, but as a part of or an accretion to the legacy itself. [Citations.] In the case last above cited, an action in *assumpsit* to recover interest due on a legacy

---

[3]In this section of this opinion, references to section 3290 are to Civil Code section 3290.

was allowed even though the legacy had theretofore been paid. From what has been said, it follows that any payment less than the aggregate of the legacy and interest constitutes nothing more than a payment on account and should not serve to extinguish the right to interest on the legacy."

It is the sense of *Hubbell* that in considering the application of section 3290 we must distinguish between *interest as damages,* and *interest as debt.* ■ Where the obligation to pay interest arises out of a contract to pay interest the interest is part of the debt, it is an accretion to the principal. In such a case any payment less than the aggregate of the principal and interest constitutes nothing more than a payment on account and does not extinguish the right to interest on the principal.

The rule is well stated in *Nelson* v. *Chicago Mill & Lumber Corporation* (8th Cir. 1935) 76 F.2d 17, 22-23, as follows:

"Where interest is recoverable only as damages and payment of the principal is accepted as such, interest cannot be recovered because payment of the debt extinguishes the right to recover interest thereon. [Citations.]

"Where a claim for interest is based on a contract, express or implied, acceptance of the principal debt will not defeat the right to recover accrued interest in a subsequent action. [Citations.]

"Clearly, the right to recover interest after the principal has been received and accepted depends on whether the interest is due by the terms of a contract or as damages in an action for the principal. When the right to interest is based on a contract, it becomes a substantive part of the debt itself and is recoverable even though the principal debt has been paid and extinguished; but where the interest is in the nature of damages for the breach of a duty, or a contract not providing for interest, it can be recovered only with the principal. Of these two well-defined classes of cases, the one before us belongs to the former for the simple reason that the contract involved expressly provided for the payment of interest."

■ The reasoning in *Hubbell,* and in *Nelson,* applies directly to the case at bench, where the basis of the claim for interest is the contract between the parties pursuant to which Lakewood agreed to pay interest to Kawasho. Kawasho does not claim interest as damages but does claim interest as a part of Lakewood's debt to Kawasho.

Not only does section 3290 not apply as a waiver where the interest is part of the debt, as pointed out above, but the California courts have iden-

tified and prescribed other limitations on its application. Thus, our courts have held that the waiver of section 3290 ". . . cannot be invoked . . . where the conditions of payment are such that the person entitled to payment is precluded from asserting the claim to damages at the time of payment." *Conner* v. *Bank of Bakersfield* (1920) 183 Cal. 199, 205 [190 P. 801]. In *McConnell* v. *Pacific Mutual Life Ins. Co.* (1962) 205 Cal.App.2d 469, at page 482 [24 Cal.Rptr. 5], the court stated, with respect to section 3290: "This statute is a rule of construction to be applied between parties dealing at arm's length, where their agreement is to be inferred from the fact that principal is tendered and accepted. This rule cannot be invoked, however, where the conditions of payment are such that the creditor has no opportunity to assert his claim for interest at the time of payment. (*Conner* v. *Bank of Bakersfield,* 183 Cal. 199, 205."

To the same effect, see *Mitchell* v. *City of Los Angeles* (1966) 239 Cal.App.2d 618, 632 [49 Cal.Rptr. 13].

## 5. *The Trial Court Calculated the Amount of Judgment Correctly.*

██ Lakewood's final contention is also without merit. The trial court properly calculated the amount of the judgment.

Lakewood bases its argument on an excerpt from the trial court's *notice of intended decision* which includes the words "interest on orders placed after February of 1976 . . ." and Lakewood argues that that language should control the calculations of interest. However, that language was not carried forward to the findings of fact, conclusions of law, and judgment.

The excerpt Lakewood relies upon is of no consequence. "No utterance of the trial judge, either in a memorandum prepared for the aid of counsel or in an extemporaneous remark during the trial, affects in the slightest degree his formal findings and award." *Larson* v. *Thoresen* (1953) 116 Cal.App.2d 790, 798 [254 P.2d 656].

The trial court's findings were that "[f]rom at least [February 25, 1976] forward, Lakewood . . . . had actual notice that Kawasho intended to add interest to Lakewood's past due account." The court then concluded that "From February 1976, the situation and relationship of the parties, together with their conduct, establish an implied-in-fact agreement by LAKEWOOD to pay interest on its past due account with KAWASHO."

We note that the trial court's notice of intended decision was filed on June 10, 1981, and that the findings, conclusions and judgment were filed on

August 25, 1983. The record reflects that in the interim there were a number of post-trial proceedings between the parties and the court before the findings and conclusions were settled and judgment made and entered. Lakewood filed objections to some of the proposed findings of fact and conclusions of law, but made no objections in the trial court to the date from which interest would be calculated. This point was never raised by Lakewood until after the clerk's and reporter's transcripts on appeal had been filed.

## DECISION

The judgment is affirmed.

Klein, P. J., and Lui, J., concurred.