Filed 7/25/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HEBBERD-KULOW ENTERPRISES, INC., | D060438 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. ECU03823) |
| KELOMAR, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Donal B. Donnelly, Judge.  Reversed.

Sutherland & Gerber and Lowell F. Sutherland for Defendant and Appellant.

Horton, Knox, Carter & Foote, Orlando B. Foote and Margarita McKee Haugaard for Plaintiff and Respondent.

Hebberd-Kulow Enterprises, Inc. (HKE) sold agricultural supplies to Kelomar, Inc. (Kelomar) for 20 years.  HKE brought suit against Kelomar when Kelomar refused to pay for certain goods shipped under 33 separate invoices.  Kelomar filed a cross-complaint alleging damages arising from HKE's delivery of nonconforming labels provided under a contract that did not involve the 33 invoices.

The matter proceeded to trial where the jury awarded HKE damages in the amount of $439,792.99, consisting of $259,120.50 of principal and $180,672.49 of interest. The jury also awarded Kelomar $27,769.94 on its cross-complaint.

Kelomar appeals, contending the court erred as a matter of law in interpreting the various contracts between the parties to include interest charges on late payments. In the alternative, Kelomar argues that even if the parties agreed that Kelomar would pay interest on any late payment, the amount of interest was improperly calculated because the principal awarded HKE was subject to a set off. We conclude the trial court erred in ruling that the parties' contracts included an interest charge for late payments (the interest provision). As we discuss below, the court made this ruling as part of its consideration of HKE's motions in limine, but did not appear to have a basis to do so on the record, and thus, we reverse the judgment. We do not reach Kelomar's set off argument.

FACTUAL AND PROCEDURAL HISTORY

*Facts*

HKE has sold agricultural supplies to Kelomar for 20 years. During these 20 years, Kelomar would routinely order products over the phone. HKE would agree to supply the items requested. In the phone call, the parties' representatives would discuss and agree to the type of item, its quantity, and its price. Kelomar would provide HKE with a purchase order number for the requested items. After delivery of the items to Kelomar, HKE would send Kelomar an invoice that corresponded to the applicable purchase order number. Kelomar often paid late, but HKE never charged Kelomar interest on the late payments.

2

The dispute between the parties arose after HKE delivered about $250,000 worth of goods in the spring of 2007. These goods were shipped separately with corresponding invoices. In all, there were a total of 33 invoices for the subject goods. At the bottom of most invoices was printed: "Unpaid invoices beyond terms will be assessed a monthly service charge of 1-1/2%."

Kelomar did not pay any of these 33 invoices because it claimed to have incurred damages due to certain nonconforming labels supplied by HKE. These nonconforming labels were not part of the 33 unpaid invoices, but instead were shipped under a separate contract between the parties.

*The Lawsuit*

HKE filed suit against Kelomar for its failure to pay the 33 invoices. In response, Kelomar filed a cross-complaint for damages arising out of the defective labels.

*HKE's Motion In Limine No. 4*

Prior to trial, HKE filed several motions in limine. Motion in limine No. 4 sought to preclude evidence that would vary the express terms of the 33 invoices, specifically the charging of interest or a service charge if payment was made late. In support of this motion, HKE submitted the declaration of one of its trial attorneys, ostensibly authenticating copies of the 33 invoices that were attached to the attorney's declaration as Exhibit A.

Kelomar opposed motion in limine No. 4, arguing that the parties never intended any interest payment or service charge to be part of their contract and a prior course of conduct would show HKE never demanded payment of interest. Kelomar also argued

3

that the issue of whether the interest provision contained in the invoices was a term of the contracts between the parties was governed by California Uniform Commercial Code section 2207.[1]  In support of its opposition, Kelomar submitted a declaration from one of its trial counsel describing the facts he believed would be adduced at trial.

The trial court denied motion in limine No. 4, but in doing so, ruled that the 33 invoices, under section 2202, were writings intended by the parties as the final expression of their agreement.  The court then stated that it found, under section 2202, that the "agreement between [the] parties may be explained or supplemented by either the course of dealing, course of performance, or usage of trade."  However, the court made clear that it "found an express agreement between the parties, requir[ing] interest to be paid."  The court, nevertheless, stated it would allow evidence at trial to show the interest provision had never been enforced or may have been waived.  When HKE's counsel asked the court if it determined that the invoices were part of the parties' contracts under section 2207, the court responded:  "And the reason that I stated that this morning is, I believe that's an issue of law that must be determined by the court.  And I'd like to assist the parties by removing that issue from the table."

Kelomar's counsel then argued that additional evidence to be proffered at trial would bear on the issue of whether the parties intended to include the payment of interest as part of their contracts.  During Kelomar's counsel's argument, the court and counsel engaged in the following exchange:

---

[1]     Statutory references are to the California Uniform Commercial Code unless otherwise specified.

4

"[Kelomar's counsel]: I think the evidence is going to be undisputed that the parties understood that they were never going to pay interest. And I think there is additional testimony from Mike [Kulow], who, I think, at that time was the president of HKE, that the reason he did that was because he considered Kelomar to be a good customer, and he wanted to continue to get their business. [¶] And knew -- I don't know if he will actually testify to this. But I think he knew that the produce business was such that the cash flow was not always there when the bills came out. [¶] I think that the central thing that you have to decide is, what evidence do you have that any of those invoices represent Kelomar's understanding of the final expression.

"The Court: Because that was the contractual document between the parties. It would have been far preferable if they had entered into a specific agreement, but they didn't. And if you have evidence that will show that, for years, that document was the key contractual document and we've provided stuff to you, there's the bill, and you pay it. Absent any evidence, affirmative evidence, that that was rejected, then I have to find that it's integrated. [¶] Now, I'm prepared to find that Mr. [Kulow's] comments would be a waiver of enforcement, but how can I not find -- it's the only expression of express intent between the parties that exists.

"[Kelomar's counsel]: I think you're confusing the fact that it's written -- because it's written, you're assuming that it's the contract. The contract is the actual meeting of the minds between the parties. This may be evidence of the contract, but there is other evidence, parole evidence, of the contract from both parties that they never charged interest and that they never paid interest. [¶] And if you look at [section] 2207, which allows evidence in the course of dealings, that evidence comes in, unless the court finds [the] writing to have been intended that they complete an exclusive statement of the terms of the agreement. And there is no evidence that either party considered that to be an exclusive statement, any of those invoices intended to be an exclusive statement of the agreement between them. Because --

"The Court: There's no evidence that it wasn't, though.

"[Kelomar's Counsel]: Yes, there is evidence that there wasn't. The testimony of both Kelomar and Mr. [Kulow], that they never enforced the --

"The Court: There's a difference between the enforcement and existence of the term . . . . I thought I made that clear. It exists. It's a term that exists. Whether enforcement was waived is a separate issue. That's where we quarrel."

At the end of the hearing, the court made clear that it was ruling that the interest provision was part of the parties' contracts. The court also stated that it denied motion in limine No. 4 without prejudice.

*The Trial and Postjudgment Briefing*

The dispute proceeded to trial. The jury awarded HKE a total of $439,792.99, consisting of $259,120.50 in principal and $180,672.49 in interest. The jury also awarded Kelomar $27,769.94 on its cross-complaint.

After the jury's verdicts were entered and the jury was discharged, there was a postjudgment hearing on matters briefed by the parties. One of those issues involved Kelomar's argument that the determination whether interest was part of the parties' contracts was a question of law for the court to decide. Kelomar contended there was never meeting of the minds regarding interest being charged, and as such, no interest should have been awarded to HKE.

The court declined to rule as a matter of law that HKE could not recover interest. It stated:

"Again, I know the way in which this jury was instructed -- I'll note according to the court's ruling there was a specific instruction given on waiver. Nevertheless, this jury did hear conflicting testimony from the parties as to what the intent of the parties were, as well as what their agreement may or may not have been. So this court will respectfully decline to make any contrary legal interpretation on that issue. It does appear it would require the court to improperly interfere with a finding of fact, either explicitly or implicitly, by the

6

jury of its special verdict. [¶] I think it is important to note from this court's perspective, having heard the evidence, one of the most significant disputed issues of fact is whether there ever was any agreement between the parties not to charge interest. A stronger argument could be made that interest may not be recovered if there was affirmative evidence -- I should say undisputed evidence that the parties agreed not to charge interest. And I know that is an argument made [b]y Kelomar by virtue of their conduct and relationship and history of their practices that in fact was the agreement. That remains in dispute. It's clear from the testimony . . . that that remains in dispute."

Kelomar timely appealed the judgment.

DISCUSSION

Kelomar argues that the trial court erred in deciding as a matter of law that the interest provision was a term of the parties' contracts. We agree.

It is undisputed that the parties here are merchants (§ 2104, subd. (1)) and thus that their transactions are governed by the California Uniform Commercial Code. In finding the interest provision part of the parties' contracts, the court stated "the invoices under section 2202 do qualify as writings intended by the parties as final expression of their agreement with respect to such terms." The court also responded affirmatively that it was relying on section 2207 as well. Thus, we begin our analysis by reviewing these Commercial Code sections and evaluating the trial court's ruling under them.

Section 2202 states:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

7

"(a) By course of dealing, course of performance, or usage of trade (Section 1303); and

"(b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

Section 2202 removes written agreements for the sale of goods from the operation of Code of Civil Procedure section 1856, the general parol evidence statute. (See 4 Witkin, Summary of Cal. Law (10th ed. 2005) Sales, § 33, p. 46.) Thus, section 2202 is not a statute that provides particular guidance to a court to determine if a writing is intended to be a final expression of the parties' agreement. Instead, it directs the court regarding what evidence it should admit to explain or supplement the terms of the agreement. (§ 2202; 4 Witkin, *supra,* at p. 46.)

In its motion in limine No. 4, HKE did not mention section 2202. In fact, HKE essentially asked the court to ignore section 2202 and prohibit the admission of any parole evidence. In opposition to the motion, Kelomar argued that section 2207 allowed extrinsic evidence to determine if the parties intended to have the interest provision be part of their final agreement.

The trial court correctly ruled that section 2202 would allow certain parole evidence at trial. However, the court erred when it found the invoices were writings intended by the parties to be the final expression of their agreement, and as such, the parties agreed to the interest provision. There simply was not enough evidence before the court to make this determination.

HKE offered no evidence that the parties intended the invoices to be the final expression of their agreement. Kelomar certainly did not offer any evidence to support this finding and vigorously argued against this finding at the hearing, representing to the court that, at trial, evidence would be offered that would prove that the parties never intended the invoices to be the final expression of their agreement and the interest provision was not part of their contracts. Based on the limited evidence in front of the court when it considered motion in limine No. 4, there was no basis on which the court could conclude the parties intended the invoices to be the final expression of their agreement. Therefore, the court could not base its ruling that the interest provision was part of the parties' agreement under section 2202 on the invoices themselves.

Although we conclude section 2202 was not the appropriate provision for the trial court to conclude the parties agreed to the interest provision, the court also made reference to section 2207 in discussing its ruling. HKE asked the court if it was finding that the interest provision was an agreed to term under the parties' agreement pursuant to section 2207. The court implied that it was. Further, Kelomar argued in its opposition that section 2207 was the proper statute to apply to the invoices and the analysis of whether the parties intended the interest provision to be part of the parties' agreement.

Section 2207 provides as follows:

> "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

9

"(2) The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

"(a) The offer expressly limits acceptance to the terms of the offer;

"(b) They materially alter it; or

"(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code."

Section 2207 was intended to address a " 'battle of the forms' [situation] in which contracting parties exchange pre-printed forms that attempt to cast liability for certain categories of damage on the other party to the transaction."  (*Frank M. Booth, Inc. v. Reynolds Metals Co.* (E.D.Cal. 1991) 754 F.Supp. 1441, 1445.)  It does so "by providing 'rules of contract formation in cases . . . in which the parties exchange forms but do not agree on all the terms of their contract.' "  (*Ibid*., quoting *Diamond Fruit Growers, Inc. v. Krack Corp.* (9th Cir. 1986) 794 F.2d 1440, 1443.)  The statute "establishes a legal rule that proceeding with a contract after receiving a writing that purports to define the terms of the parties' contract is not sufficient to establish the party's consent to the terms of the writing to the extent that the terms of the writing either add to, or differ from, the terms detailed in the parties' earlier writings or discussions.  In the absence of a party's express assent to the additional or different terms of the writing, [Uniform Commercial Code]

10

section 2-207 provides a default rule that the parties intended, as the terms of their agreement, those terms to which both parties have agreed, along with any terms implied by the provisions of the UCC." (*Step-Saver Data Systems, Inc. v. Wyse Technology* (3d Cir. 1991) 939 F.2d 91, 99, fns. omitted [discussing § 2-207 of the Uniform Commercial Code].)

Our Supreme Court explained contract formation under the Commercial Code as follows: "Under traditional common law, no contract was reached if the terms of the offer and the acceptance varied. 'In order to make a bargain it is necessary that the acceptor shall give in return for the offeror's promise exactly the consideration which the offeror requests.' [Citation.] This 'mirror image' rule of offer and acceptance was plainly both unfair and unrealistic in the commercial context. 'The fact that the parties did intend a contract to be formed and both had a reasonable commercial understanding that the deal was closed, is ignored.' [Citations.]" (*Steiner v. Mobil Oil Corp.* (1977) 20 Cal.3d 90, 99 (*Steiner*).)

"Section 2207 rejects the 'mirror image' rule. [Citation.] 'This section of the Code recognizes that in current commercial transactions, the terms of the offer and those of the acceptance will seldom be identical.' [Citation.]" (*Steiner*, *supra*, 20 Cal.3d at p. 99.)

"Under section 2207, for example, the parties may conclude a contract despite the fact that, after reaching accord, they exchanged forms which purport to memorialize the agreement, but which differ because each party has drafted his form 'to give him advantage.' [Citations.] Similarly, the parties may form a contract even if the terms of offer and acceptance differ because one or the other party, in stating its initial position,

11

relies upon 'forms drafted to cover the majority of [its] transactions in a uniform, standard manner' [citation], and subsequently fails to amend its form to reflect the deal which the other party claims was actually negotiated. [Citation.]" (*Steiner*, *supra*, 20 Cal.3d at p. 99.)

"In place of the 'mirror image' rule, section 2207 inquires as to whether the parties intended to complete an agreement: 'Under this Article a proposed deal which in commercial understanding has in fact been closed is recognized as a contract.' [Citation.] If the parties intend to contract, but the terms of their offer and acceptance differ, section 2207 authorizes a court to determine which terms are part of the contract, either by reference to the parties' own dealings (see § 2207, subds. (1), (2)), or by reference to other provisions of the code. (See § 2207, subd. (3).)" (*Steiner*, *supra*, 20 Cal.3d at pp. 99-100.)

"Section 2207 is thus of a piece with other recent developments in contract law. Instead of fastening upon abstract doctrinal concepts like offer and acceptance, section 2207 looks to the actual dealings of the parties and gives legal effect to that conduct. Much as adhesion contract analysis teaches us not to enforce contracts until we look behind the facade of the formalistic standardized agreement in order to determine whether any inequality of bargaining power between the parties renders contractual terms unconscionable, or causes the contract to be interpreted against the more powerful party, section 2207 instructs us not to refuse to enforce contracts until we look below the surface of the parties' disagreement as to contract terms and determine whether the parties undertook to close their deal. Section 2207 requires courts to put aside the formal and

12

academic stereotypes of traditional doctrine of offer and acceptance and to analyze instead what really happens." (*Steiner*, *supra*, 20 Cal.3d at p. 100; italics omitted.)

Here, there is no dispute that the parties' entered into multiple contracts. Kelomar agrees that it ordered goods from HKE and the invoices correctly list the agreed upon price of the goods. The issue at the heart of this appeal is whether the parties agreed to the interest provision. Section 2207 is the appropriate mechanism to determine this issue.

The evidence adduced at trial supports the application of section 2207. The parties enjoyed a 20-year business relationship where Kelomar often placed orders over the telephone and the parties would agree on a price. After the goods were delivered, HKE would provide Kelomar with an invoice. The invoice typically stated that a 1 1/2 percent service charge would be applied to late payments. There is no evidence that the parties agreed to an interest charge when Kelomar placed its orders with HKE, but there also is no evidence that Kelomar voiced any objection to the interest provision in the invoice.

While the evidence produced at trial lends itself to application of section 2207, the court, when it ruled on motion in limine No. 4, did not have this evidence before it. Indeed, as we discuss above, there was very little evidence offered in support of or in opposition to motion in limine No. 4. In support of its motion, HKE provided copies of the 33 invoices and a declaration from trial counsel attempting to authenticate the invoices. It provided no declaration from any percipient witness explaining how the parties conducted business, how the invoices were used, or any other pertinent evidence that would allow the court to properly apply section 2207. Instead, HKE primarily

13

offered argument in support of its motion. An attorney's argument in pleadings is not evidence.

In opposing motion in limine No. 4, Kelomar offered no evidence. It merely submitted the declaration of trial counsel who stated what evidence he anticipated would be offered at trial. Thus, the only evidence in front of the court in determining the parties intended the interest provision to be a part of their agreement was the 33 invoices. These invoices, absent additional evidence, did not by itself establish that the interest provision was an agreed upon term. (Cf. *India Paint & Lacquer Co. v. United Steel Products Corp.* (1954) 123 Cal.App.2d 597, 607 ["The prevailing rule is that an invoice, standing alone, is not a contract, [citations]; and a buyer is ordinarily not bound by statements thereon which are not a part of the original agreement."] Thus, to find the interest provision an agreed upon term under section 2207, the court had to rely on more evidence than the invoices. And there was no indication in the record that there was any additional evidence before the court at that time.

In addition, during argument on the motion in limine No. 4, the court was made aware that, at trial, there would be evidence offered weighing on the issue of the inclusion of the interest provision. Kelomar's counsel represented that he was aware of witnesses who would testify that the parties never intended for the interest provision to be part of their agreement. As such, based on the evidence before the court at the hearing on the motion in limine No. 4, the court, under section 2207, did not have a basis to find that the interest provision was part of the agreement between the parties. There simply was not enough evidence for the court to make that determination as a matter of law.

14

Further, there was the indication that conflicting evidence on this issue would be presented at trial. Whether parties have reached a contractual agreement and on what terms are questions for the fact finder when conflicting versions of the parties' negotiations require a determination of credibility. (*Kawasho Internat., U.S.A., Inc. v. Lakewood Pipe Service, Inc.* (1983) 152 Cal.App.3d 785, 791 (*Kawasho*); *Southern Christian Leadership Conference v. Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207, 220.)

The court's comments after trial remove any doubt that it should not have ruled the interest provision was an agreed upon term as a matter of law at the motion in limine hearing. After the verdict was rendered but prior to entry of judgment, Kelomar asked the court to rule as a matter of law that the interest provision was not a term of the parties' contracts. The court declined to do so, noting, "one of the most significant disputed issues of fact is whether there ever was any agreement between the parties not to charge interest." The court then implied the jury made a finding of fact on this issue and it did not want to "interfere with a finding of fact" by making a ruling as a matter of law. Thus, prior to hearing any evidence, the court made a ruling, as a matter of law, that the parties agreed to the interest provision. However, after hearing all the evidence at trial, the court stated that whether the parties agreed to the interest provision was a "significant" disputed fact. We cannot reconcile the court's posttrial comments with its comments during the hearing on motion in limine No. 4. At the very least, the court's posttrial comments underscore the court's error in ruling on motion in limine No. 4.

15

HKE, nevertheless, asserts the trial court properly found that the interest term was part of the parties' agreement, but relies on the evidence presented at trial. Further, to support its position, HKE cites *Southwest Concrete Products v. Gosh Construction Corp.* (1990) 51 Cal.3d 701 (*Southwest Concrete*); *Boyd v. Oscar Fisher Co., Inc.* (1989) 210 Cal.App.3d 368; and *Kawasho*, *supra*, 152 Cal.App.3d 785. These cases all address a situation where the trier of fact, after trial, found that an additional term contained in an invoice was part of the parties' contract.[2] *Boyd* and *Kawasho* both involve a substantial evidence review. While we do not quibble with the holdings of these cases, they are not applicable here where the court determined, as a matter of law during a motion in limine hearing, that the parties agreed that a certain term was part of their contracts.

Moreover, we find nothing in the record that leads us to believe the jury, per section 2207, found that the interest provision was part of the parties' contracts or was even prepared to do so. There was no jury instruction under section 2207 nor would we expect there to be one when the court had already decided this issue as a matter of law. Without such an instruction, the jury lacked the framework under which to apply the evidence to make a factual finding as to the interest provision. Moreover, the parties appeared to focus more on waiver of the right to collect interest, not whether the interest

---

[2] In *Southwest Concrete*, *supra*, 51 Cal.3d 701, our high court expressly stated that it was only considering the issue of whether interest payments on overdue commercial accounts were not subject to the usury law. (*Id*. at p. 704.) However, the court stated in dicta that it agreed with the "Court of Appeal's analysis of the California Uniform Commercial Code" and that "[t]he late charges became part of the contract under section 2207[.]" (*Southwest Concrete*, *supra*, at p. 709.) Except for one sentence explaining what the jury found, the court provided no analysis of the section 2207 issue.

provision was actually part of the parties' contracts.  The jury was instructed on waiver,
the parties submitted evidence regarding waiver, and closing arguments concerned
waiver.  Simply put, the issue of whether the interest provision was an agreed upon term
was not presented to the jury.  However, based upon the court's comments that this was a
"significant" disputed fact, it should have been.  (See *Kawasho*, *supra*, 152 Cal.App.3d at
p. 791.)

In conclusion, we determine that the court erroneously determined at the motion in
limine hearing that the interest provision was part of the parties' contracts as a matter of
law.  There was not sufficient evidence in front of the court at that time to make this
determination.  Further, after hearing the trial evidence, the court's comments indicate
that the issue was one of disputed fact that should have been determined by the jury.  (See
*Kawasho*, *supra*, 152 Cal.App.3d at p. 791.)  Accordingly, the award of $180,672.49 in
interest to HKE was in error, and we must reverse.

DISPOSITION

The judgment is reversed.  Kelomar is awarded its costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.


AARON, J.

17