Filed 8/7/25  Speedy Fuel v. Wells Fargo Bank CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| SPEEDY FUEL, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WELLS FARGO BANK, N.A. et al.,<br><br>    Defendants and Respondents. | B339379<br><br>Los Angeles County<br>Super. Ct. No. BC648304 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Bleau Law Group and Samuel T. Rees for Plaintiff and Appellant.

Clark Hill, Tod V. Beebe and Ronald R. St. John for Defendant and Respondent Wells Fargo Bank, N.A.

Greenberg Traurig, Jordan D. Grotzinger and Michael E. McCarthy for Defendant and Respondent J.P. Morgan Chase Bank, N.A.

_____

Speedy Fuel, Inc. went on a multiyear quest to find someone to pay for fuel pumped at two of its service stations in 2014 and 2015. It admits defective software used in debit transactions at the stations was the root of the problem. The trial court determined there was no contractual basis for making the customers' banks pay for the fuel purchases years later and granted summary judgment in their favor. We affirm.

I

We sketch the parties and the proceedings first and delve into the details of the transactions later when explaining why summary judgment was the right result.

Speedy Fuel operates fuel service stations that primarily serve truckers. It charges a 50-cent fee for debit transactions. Speedy Fuel purchased a software system from Gilbarco, Inc. for use in these transactions. It deployed the software at the two stations in or around September 2014.

Speedy Fuel contracted with Banc of America Merchant Services, LLC (BAMS), which subcontracted with First Data Corporation, to process the debit card transactions at the two stations.

The failed transactions all involve Visa debit cards. Interlink Network, Inc. is a debit card network that merchants and banks use to process Visa debit transactions and to transfer funds.

In August 2015, Speedy Fuel discovered the Gilbarco software wrongly added *a second, unauthorized 50-cent charge* on debit transactions at the two stations. According to Speedy Fuel, this extra charge started a chain reaction that led to considerable nonpayment. Specifically, the extra charge caused First Data to

2

reject Visa debit transactions after customers dispensed their fuel because the transactions violated Visa/Interlink rules against seeking payments greater than the amount authorized. First Data alerted the Gilbarco point of sale system of the rejections but did not complete the transactions with the customers' banks.

In short, Speedy Fuel customers got their fuel, but Speedy Fuel did not get paid.

The company sued in 2017, asserting 70 causes of action against an array of defendants. It sought to recover roughly $1.6 million for about 6,700 unpaid transactions, plus interest.

Speedy Fuel amended its complaint later in 2017 to name more than 60 defendants, including the software maker (Gilbarco), Speedy Fuel's payment processors BAMS and First Data, and individual customers who allegedly received fuel without paying for it. It also sued several financial institutions who issued debit cards to the customers, including JPMorgan Chase Bank, N.A. and Wells Fargo Bank, N.A. We refer to these two as the Banks.

The case advanced in several phases.

First, Speedy Fuel proceeded against individual customer defendants. It obtained judgments against some. It settled with others. The trial court eventually dismissed additional customers from the case because Speedy Fuel did not prosecute its claims against them.

Next, Speedy Fuel tried its claims against Gilbarco and obtained a judgment for $1.3 million. Gilbarco appealed, and Speedy Fuel eventually settled with this defendant.

Speedy Fuel also settled with Speedy Fuel's processor defendants, First Data, BAMS, and Interlink, and with Bank of America N.A., Speedy Fuel's bank.

Finally, the case centered on the customers' financial institutions. The Banks moved for summary judgment and summary adjudication of Speedy Fuel's two claims against them. These claims were for breach of contract and goods sold and delivered. The Banks argued there was no meeting of the minds for them to pay for customer fuel purchases, as they provided mere preauthorization for these transactions but were not notified of completed transactions and did not receive timely payment requests. The Banks also argued there was no breach, and Speedy Fuel's second cause of action failed because, among other things, the Banks never received fuel. The Banks supplied evidence outlining the process for debit transactions and confirming they never received notice of completed transactions, which was necessary to trigger payment.

Speedy Fuel opposed the Banks' motion, relying largely on the declaration of its president and chief executive officer, Grigor Terrmendjian. Speedy Fuel also supplied the declaration of First Data representative Kelly Hynek. Hynek's declaration was consistent with her company's interrogatory responses, which confirmed First Data rejected the disputed debit transactions for seeking an invalid amount, in accordance with Interlink rules, without providing notice to the Banks.

There was a hearing on the Banks' motion. Speedy Fuel elected to proceed without a reporter's transcript. The trial court sustained objections to the Terrmendjian declaration. Speedy Fuel ignores these rulings on appeal. The court also ruled for the Banks on the merits and entered judgment against Speedy Fuel.

II

Summary judgment is a particularly suitable means of testing the sufficiency of the plaintiff's case. (*Garcia v. D/AQ*

4

*Corp.* (2020) 57 Cal.App.5th 902, 907.) We independently review these decisions, considering the evidence before the trial court that remained after objections. (See *Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1229–1230 (*Aton*).)

Under our summary judgment procedure, the moving party must show there is no triable issue of material fact and it is entitled to judgment as a matter of law. This can be done by showing the plaintiff cannot establish an element of its cause of action. The opposing party then must show the existence of a triable issue of material fact to avoid summary judgment. (Code Civ. Proc., § 437c, subds. (c) & (p)(2).)

We approach summary judgment appeals, as other appeals, presuming the judgment is correct and requiring the appellant to demonstrate error. (*Aton*, *supra*, 93 Cal.App.5th at p. 1230.)

Our independent review confirms there was no triable issue of material fact as to the existence of a contract between Speedy Fuel and the Banks. As a result, we need not reach other bases for summary judgment. (See *Aton*, *supra*, 93 Cal.App.5th at p. 1242 ["summary adjudication is properly granted where the moving party succeeds in establishing that a single element of a cause of action cannot be proven"].)

A

Proving a contract is the first and most basic element of a breach of contract claim. (See *Aton*, *supra*, 93 Cal.App.5th at p. 1230.) An essential element of any contract is mutual assent, which the parties must communicate to each other. (Civ. Code, §§ 1550, 1565; *Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512, 518; see also *Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 460 [mutual manifestation of assent is

the touchstone of contract].)  The parties must "agree upon the same thing in the same sense" to form a contract.  (Civ. Code, § 1580.)  The test for mutual assent is objective.  (*Aton*, *supra*, 93 Cal.App.5th at p. 1231; see also *Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 947–948 [California recognizes the objective theory of contracts; subjective intent is irrelevant].)

The Banks' evidence showed the debit transaction here is a multi-step, electronic process via the Visa/Interlink payment processing system, governed by Visa/Interlink rules.  When customers insert or swipe their debit card, they request preauthorization for a purchase up to a certain amount.  The merchant's point of sale system (designed by Gilbarco) electronically notifies the merchant's payment processor (First Data), which routes the preauthorization request to Visa/Interlink, which sends the request to the customer's bank or its agent to determine whether the pin number entered is correct and whether the customer's bank account has sufficient funds for the transaction.  The bank sends a response back to Interlink, and the response is routed back to First Data and then the merchant's point-of-sale system.  Following preauthorization, the bank places a hold on customer funds, and the customer has the option to continue with the transaction.

First Data awaits a "completion" message from the merchant's system confirming the sale was completed and the final amount to be debited.  Visa/Interlink rules require that the amount submitted for completion may not exceed the preauthorization amount.  If this condition is satisfied, First Data sends the completion message to Interlink, which forwards it to the customer's bank.  The bank then debits the sale amount from

the customer's account and sends the funds along the same path into the merchant's bank account.

The completion message thus is vital to complete a transaction. Without this confirmation that a sale happened, there is no basis for debiting funds from a customer's account.

Here, as mentioned, the Gilbarco software used by Speedy Fuel wrongly added *two* 50-cent fees when the point of sale system sought payment for a sale. This meant the amount in the completion message exceeded the preauthorization amount. First Data then rejected the transactions based on its application of Interlink's rules, meaning it did not transmit completion messages or payment requests to Visa/Interlink or to the Banks. The Banks, in turn, did not receive the electronic communication necessary to debit funds from customer accounts. Consistent with industry practice, they released any hold on customer funds.

The Banks' evidence shows there was no mutual assent for them to pay for the disputed transactions. From the Banks' standpoint, the transactions were abandoned. Their evidence was sufficient to shift the burden to Speedy Fuel to create a triable issue on the existence of a contract between it and the Banks.

Speedy Fuel attempted to counter the Banks' showing with the declaration of its principal, who conceded at deposition that the preauthorization approval simply means the customer has sufficient funds to pay the transaction, and that the banks had to receive a second message confirming the purchase amount in order to pay out customer funds. Speedy Fuel does not acknowledge the trial court struck key parts of Terrmendjian's declaration. Nor does it challenge these evidentiary rulings,

7

which means they are binding on appeal.  (See *Aton*, *supra*, 93 Cal.App.5th at p. 1227, fn. 4.)

Speedy Fuel argued about its "reasonable" expectations for fuel purchases.  But one side's unilateral expectations or impression of another's acts cannot create a triable issue on mutual assent.  (See *Aton*, *supra*, 93 Cal.App.5th at pp. 1237–1238 & fn. 6, 1244; see also *id.* at p. 1241 [principal's "unilateral, undisclosed, subjective interpretation of [verification of benefits] calls . . .  is not evidence of mutual intent"].)

Speedy Fuel also supplied the Hynek declaration, which bolsters the Banks' view of the debit transactions.  As mentioned, this declaration was consistent with First Data's interrogatory responses, which provided:  "[T]he proposed pin debit transactions were rejected by First Data because the amount submitted for completion exceeded the pre-approved amount, as per Interlink's rules and regulations."

Speedy Fuel's showing was insufficient to create a triable issue regarding the mutual assent necessary for a breach of contract claim.  (See *Aton*, *supra*, 93 Cal.App.5th at pp. 1218–1219, 1235–1239, 1242 [summary adjudication of contract claim was proper where plaintiff health care provider lacked evidence to establish mutual assent; no evidence showed the defendant insurer made any offer or promise to pay during verification of benefits and authorization calls with the provider, and no communication objectively manifested an intent to contract].)

No reasonable trier of fact could conclude that, by responding to debit preauthorization requests, the Banks had agreed to pay anything—especially their own funds—to cover customers' fuel purchases, regardless of whether the merchant completes the transaction or when the Banks receive a payment

8

request.  Confirming customers had sufficient funds at the preauthorization stage is not an objective manifestation of assent to pay.  (See *Aton*, *supra*, 93 Cal.App.5th at pp. 1238–1239.)

No evidence undermined the Banks' showing that a second message confirming the final sale was necessary to trigger debiting of customer funds.  No evidence showed the Banks otherwise discussed a contract, or intended to enter into a contractual relationship, with Speedy Fuel.  This is unsurprising, as the Banks' involvement in the transactions was fully automated; they had no direct interaction with Speedy Fuel.

Speedy Fuel relies on its fuel sale receipts, which do not show a meeting of the minds on the supposed three-way contract between itself, the customer, and the Banks.  The receipts state "POS Authorization Only" above the word "APPROVED."  (POS means point of sale.)  The receipts thus are consistent with the Banks' position they provided only a preliminary authorization here.  Further, the Banks' evidence showed they did not transmit the word "Approved" in response to preauthorization requests.

Speedy Fuel claims the Banks should be charged with Interlink's knowledge about the completed transactions without acknowledging *First Data* prevented Interlink and the Banks from learning about final sales by rejecting Speedy Fuel's completion messages and by not sending them on to Interlink or the Banks.  Moreover, First Data was acting pursuant to Speedy Fuel's contract with BAMS and not on the Banks' behalf.  Speedy Fuel's failure even to mention First Data in its opening brief, and its avoidance of record cites for critical statements of fact, reflects a lack of candor.

Speedy Fuel maintains the trial court got it wrong by applying general contract law and not the Commercial Code,

9

which has looser rules for contract formation. Even assuming these rules applied to transactions involving a fuel service station and a customer's bank, which never acquired goods, there is no triable issue regarding a contract.

Intent to contract still is required for a sale of goods under the Commercial Code and, as we have explained, it is lacking here. (See Com. Code, § 2204, subds. (1) ["A contract for sale of goods may be made in any manner sufficient to show agreement"] & (3) ["a contract for sale does not fail for indefiniteness if the parties have intended to make a contract"]; see also *Steiner v. Mobil Oil Corp.* (1977) 20 Cal.3d 90, 106, fn. 8 [the ultimate inquiry under the Commercial Code is "whether the parties' conduct indicates a consummated process of offer and acceptance, and thus intent to contract"]; *Hebberd-Kulow Enterprises, Inc. v. Kelomar, Inc.* (2013) 218 Cal.App.4th 272, 282 [following *Steiner*].)

B

Speedy Fuel abandoned its second claim against the Banks by not defending this claim at the trial court and by not challenging its dismissal on appeal. (E.g., *Aton*, *supra*, 93 Cal.App.5th at p. 1238 [issues lacking a developed argument are forfeited on appeal].)

Summary judgment was proper.

///

///

///

10

## DISPOSITION

We affirm the judgment and award costs to respondents.


WILEY, J.

We concur:


STRATTON, P. J.


VIRAMONTES, J.