Filed 5/13/15  Prince v. Thompson Building Materials CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JEFFREY A. PRINCE et al., | B246384 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. YC059602) |
| v. | |
| THOMPSON BUILDING MATERIALS, | |
| Defendant and Appellant. | |

APPEALS from a judgment of the Superior Court of Los Angeles County. Laura C. Ellison, Judge.  Vacated with directions and in part dismissed.

Greenberg, Whitcombe, Takeuchi, Gibson & Grayver, Richard C. Greenberg, John D. Whitcombe, Michael J. Weinberger for Plaintiffs and Appellants.

Prenovost, Normandin, Bergh & Dawe, Michael G. Dawe, Kristin F. Godeke for Defendant and Appellant.

_____

Plaintiffs sued a building materials seller, contending that flagstone purchased for construction of a patio and pool deck was defective. The trial court first granted summary adjudication and then summary judgment in favor of defendant seller, finding, among other things, that the relevant agreement excluded any implied warranties, and that defendant did not owe plaintiffs a duty of care.

We find that the trial court improperly relied on a third party's discovery responses in granting summary judgment against plaintiffs. We also find that defendant failed to establish it did not owe a duty of care.

## BACKGROUND

### Facts

Plaintiffs and appellants Jeffrey and Sherri Prince had construction work done at their Redondo Beach home (the property), including building of a patio and pool deck. The Princes hired a general contractor for construction at the property, and the general contractor retained a subcontractor, John Simich Construction, Inc. (Simich),[1] to perform shoring, concrete foundation, and masonry work. Simich's masonry work included the laying of flagstone in the patio and pool area.

Simich bought materials for the project from defendant Thompson Building Materials (Thompson). Simich was informed by the Princes and their designer, Ginger McGann, that they would like to use a particular type of flagstone, called "Colonial Cream Patio Flag," for construction of the patio and pool area.

Simich purchased the flagstone by placing telephone orders with Thompson. Approximately 16 orders for the flagstone were placed, beginning in June 2005 and continuing through December 2006, for a total of more than $37,000. Following each telephone transaction, Thompson wrote up an "invoice," which was mailed to Simich, and, upon delivery of the flagstone to the property, Simich was provided with a "charge order."

---

[1] References to "Simich" include John Simich Construction, Inc., as well as its principal, John Simich.

The invoices and charge orders were similar in appearance. All relevant invoices and charge orders contained a "sold to" field indicating the sale was to "Simich Construction," and most listed the "ship to" destination as the property. The charge orders contained a line for "customer's signature," while the invoices did not.

The reverse sides of the invoices and charge orders appeared to be identical; both contained the header "TERMS AND CONDITIONS OF SALE." They stated in part: "NO EXPRESS OR IMPLIED WARRANTIES: Buyer acknowledges that seller has not made any promises, affirmations of fact, or guarantees relating to the goods except as expressly set out herein. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE GOODS APPEARING ON THE REVERSE SIDE OF THIS PAGE. THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND BUYER HEREBY ACKNOWLEDGES THAT THE GOODS ARE SOLD 'AS IS'. Buyer understands and acknowledges that variations in size, color and texture are inherent in brick, stone, grouts and other building materials." These terms and conditions appeared to be of smaller font size than that used on the front of the documents, and the front side of the documents did not reference the reverse side. Simich testified that he was unaware of the terms and conditions, and did not discuss them with anyone.

Within a couple months of installation, the flagstone began to deteriorate. Some stones experienced flaking of the top layers, while others partially decomposed.

**Procedural Background**

The Princes filed suit against Thompson in April 2009 for negligence and breach of implied warranties of merchantability and fitness relating to the problems with the flagstone. Approximately a year after the filing of the Princes' lawsuit, Thompson filed an indemnity action against Simich and the project's general contractor. The trial court thereafter consolidated the two cases.

In July 2011, Thompson filed a motion for summary judgment or, in the alternative, summary adjudication against the Princes.[2] Thompson argued that the negligence claim had no merit because Thompson owed no duty to the Princes, and there was no evidence of damage to anything but the flagstone product itself, so the losses were purely economic and not the proper subject of a negligence claim. As for breach of warranties, Thompson argued that the claim was barred by the statute of limitations, that the claim failed due to a lack of privity, and that Thompson did not know of a particular, special purpose for the flagstone purchase and the plaintiffs did not rely on Thompson's expertise in selecting the stone.

The trial court granted the motion as to the negligence and breach of implied warranty of fitness causes of action. It found that the Princes failed to present competent admissible evidence that Thompson recommended the Colonial Cream flagstone to the Princes or that McGann or John Simich relied upon any representations by Thompson when purchasing the flagstone. The court, however, did not grant summary judgment, as it found that the Princes' breach of implied warranty of merchantability claim was not adequately addressed in Thompson's moving papers.

In August 2012, Thompson filed another motion for summary judgment, seeking to dispose of the breach of implied warranty of merchantability claim. Thompson argued that the disclaimers of warranties found in the terms and conditions of the invoices and charge orders prohibited the Princes' claim. The motion expressly relied on *Simich*'s response to a request for admission and corresponding form interrogatory propounded by Thompson, wherein Simich admitted that "where an invoice and/or charge order was generated by Thompson and provided to Simich, with respect to the sale of the

---

[2]     Thompson had earlier moved to compel arbitration of the case brought by the Princes. After the trial court granted Thompson's motion, we issued an unpublished opinion (Aug. 9, 2010, B224284) granting the Princes' petition for writ of mandate, finding that Thompson waived its right to compel arbitration.

[flagstone] the [terms and conditions] apply to any such sale." Thompson submitted evidence of invoices and/or charge orders documenting each sale.

The trial court granted the motion for summary judgment, stating, in pertinent part: "Plaintiffs are not a party to the contract for the purchase of the subject stone. . . . There is no privity of contract for purposes of a breach of warranty cause of action between the original seller and a subsequent purchaser who is not a party to the original sale. (*Annunziato v. eMachines, Inc.* (C.D. Cal. 2005) 402 F.Supp.2d 1133, 1141.) [¶] However, Plaintiffs assert a third party beneficiary theory. But, '[a] third party beneficiary cannot assert greater rights than those of the promisee under the contract. Because the foundation of any right the third person may have is the promisor's contract, "[when] [a] plaintiff seeks to secure benefits under a contract as to which he is a third-party beneficiary, he must take that contract as he finds it . . . [The] third party cannot select the parts favorable to him and reject those unfavorable to him[.]"' (*Marina Tenants Assn. v. Deauville Marina Dev. Co.* (1986) 181 Cal.App.3d 122, 132.) [¶] Thus, Plaintiffs are not entitled to challenge the terms of the contract that have been admitted by the parties to the contract. John Simich Construction, Inc. . . . is the party that purchased the stone. Simich has admitted, in verified responses to Requests for Admissions, that, it was provided copies of the charge orders and/or invoices for the stone, and the disclaimer language constituted terms of the contract between the parties."

Judgment was entered in favor of Thompson and against the Princes on December 12, 2012. The Princes timely appealed.

Thereafter, Thompson brought a motion in the trial court to recover attorney fees, arguing that the Princes claimed to be third party beneficiaries of the invoices and charges orders, and that those documents' terms and conditions provided for the recovery of fees by the prevailing party. The trial court denied the motion, ruling that Thompson could only recover costs. Thompson timely appealed the ruling, and this Court subsequently ordered the two appeals consolidated.

5

**DISCUSSION**

Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. A defendant meets its burden on summary judgment by showing that the plaintiff cannot prove its causes of action, or by establishing a complete defense to the plaintiff's causes of action. (Code Civ. Proc., § 437c, subd. (p)(2).) The burden then shifts to the plaintiff to show a triable issue of fact material to the cause of actions or defense. (*Ibid.*)

We evaluate a summary judgment ruling de novo, independently reviewing the record to determine whether there are any triable issues of material fact. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1258.) In general, we give no deference to the trial court's ruling or reasoning, and only decide whether the right result was reached. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) As a reviewing court, however, we may not consider a ground for summary judgment that was not asserted by the moving party in the trial court, except under very limited circumstances. (*Ross v. Roberts* (2013) 222 Cal.App.4th 677, 683; *Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 71.)

**I. Implied Warranty of Merchantability**

Under California Uniform Commercial Code section 2314, a contract for a sale of goods contains an implied warranty that the goods are merchantable, unless the warranty is excluded or modified. As noted above, the trial court's order adjudicating the implied warranty of merchantability claim against the Princes relied on Simich's responses to a request for admission and a corresponding form interrogatory No. 17.1. In those responses, Simich admitted that the terms and conditions disclaiming warranties applied to sales of the flagstone. The Princes contend that the trial court could not properly grant summary judgment based on Simich's responses. We agree.

6

Code of Civil Procedure section 2033.410, subdivision (a) states, "Any matter admitted in response to a request for admission is conclusively established against *the party making the admission in the pending action . . . .*" (Italics added.) Subdivision (b) of Code of Civil Procedure section 2033.410 further clarifies that a party's response to a request for admission "is binding only on that party and is made for the purpose of the pending action only." Similarly, Code of Civil Procedure section 2030.410 stipulates that a response to an interrogatory may be used "only against the responding party."

In a situation analogous to the one here, the Supreme Court examined whether the answer of a defendant general contractor to a request for admission could be used in a cross-action the contractor filed against a subcontractor. (*Shepard & Morgan v. Lee & Daniel, Inc.* (1982) 31 Cal.3d 256 (*Shepard & Morgan*).) The subcontractor sought to use the contractor's admission, made in the primary action, that the contractor did not contend that working conditions caused the plaintiff's injuries. The subcontractor contended that the response negated any claim by the contractor in the cross-action that the subcontractor was responsible for hazardous conditions. The Supreme Court found that the admission could not be used by the subcontractor because the primary action and the cross-action were separate actions, and the contractor admitted a contention, not a fact. (*Id.* at pp. 259-260.) The court noted how the contractor "could have litigated its indemnity claim against [the subcontractor] in a separate, independent action, rather than by cross-complaint," in which case it would have been obvious that the admissions could not be used. (*Id.* at p. 261.)

In this case, Thompson used responses from a cross-action (the indemnity action against Simich), made by a third party (Simich), against the plaintiffs, the Princes. This approach was even more clearly improper than the one at issue in *Shepard & Morgan*.[3] First, Simich's responses could not be used against the Princes because they were not

**3** In their opposition to the motion for summary judgment, the Princes argued that Simich's responses could not be used against them, and, at the hearing, their counsel objected to the use of the responses

made in the "pending action," but rather in a cross-action. Second, and perhaps more importantly, the admissions were not used against the party making them. If a defendant's responses to requests for admission in an indemnity action could bind the plaintiff in the primary action, then cases would often be disposed of at the summary judgment stage, since an indemnity action defendant generally has a strong interest in seeing the plaintiff lose the primary case.

Without Simich's discovery responses, there was no basis to grant summary judgment of the implied warranty of merchantability claim. Thompson argued, and the trial court agreed, that the invoices and charge orders constituted the agreement between Thompson and Simich, and that as putative third party beneficiaries, plaintiffs could not alter the terms of the agreement. This determination of what exactly constituted the agreement, however, indispensably relied on Simich's discovery responses.

The issue of whether parties have reached a contractual agreement, and on what terms, generally requires a factual determination. (*Hebberd-Kulow Enterprises, Inc. v. Kelomar, Inc.* (2013) 218 Cal.App.4th 272, 283; *Brittalia Ventures v. Stuke Nursery Co., Inc.* (2007) 153 Cal.App.4th 17, 23-25 (*Brittalia*).) In *Brittalia*, the plaintiff contended that its contract with defendant consisted of a purchase proposal and a check, while the defendant contended that the contract included invoices containing warranty disclaimers. The appellate court found that "the jury could reasonably discount the significance of [the invoices] in the contractual equation." (*Id.* at p. 25.) In *India Paint Co. v. United Steel Prod. Corp.* (1954) 123 Cal.App.2d 597, 607-608, the appellate court, reviewing a jury decision, rejected the appellant's contention that shipping documents or invoices constituted the contract between the parties. Similarly, in *C9 Ventures v. SVC-West, L.P.* (2012) 202 Cal.App.4th 1483, in reviewing the result of a bench trial based on stipulated facts, the appellate court found that the parties entered into an oral agreement, and that invoices mailed after the agreement could potentially alter the terms of the agreement. (*Id.* at pp. 1487-1489.)

The lesson we can draw from these cases is that a dispute over the form and terms of an agreement generally cannot be resolved on summary judgment but instead requires

8

a weighing of evidence.  Thompson contends that the invoices and charge orders constituted the agreement between it and Simich, while the Princes contend that an oral agreement existed.  The admissible, relevant evidence presented on summary judgment does not allow us to determine which, if either, of these positions is correct.  The trial court's order granting summary judgment, therefore, was improper.

## II.  Implied Warranty of Fitness

An implied warranty of fitness attaches to a contract when "the purchaser at the time of contracting intends to use the goods for a particular purpose; the seller at the time of contracting has reason to know of this particular purpose; the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose; and the seller at the time of contracting has reason to know that the buyer is relying on such skill or judgment."  (*Metowski v. Traid Corp.* (1972) 28 Cal.App.3d 332, 341, citing Cal. U. Com. Code, § 2315.)

The trial court properly granted summary adjudication on this cause of action.  There was no evidence that the Princes or a representative relied on Thompson's skill or judgment to select the flagstone for a particular purpose, or that Thompson had reason to know that they were relying on such skill or judgment.  Simich testified that McGann and the Princes chose the Colonial Cream flagstone for use in the patio and pool area.  Simich and McGann spoke with an unidentified "yard person" about the Colonial Cream flagstone, but there is no evidence that this person made any representations about the stone or that anyone relied on his statements.  Indeed, none of the evidence presented raised a triable issue of material fact relevant to the breach of implied warranty of fitness claim.

## III.  Negligence

"Actionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury."  (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594.)  "Whether a duty of care exists 'in a particular case is a question of law to be resolved by the court.'"  (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP*

(2014) 59 Cal.4th 568, 573.) The existence of a duty of care in the absence of privity of contract depends on the balancing of several factors, including "'[(1)] the extent to which the transaction was intended to affect the plaintiff, [(2)] the foreseeability of harm to [the plaintiff], [(3)] the degree of certainty that the plaintiff suffered injury, [(4)] the closeness of the connection between the defendant's conduct and the injury suffered, [(5)] the moral blame attached to the defendant's conduct, and [(6)] the policy of preventing future harm.'" (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397, quoting *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*).)

It is well established that a party not in privity with a homeowner may nevertheless be liable for property damage resulting from negligence. In *Stewart v. Cox* (1961) 55 Cal.2d 857, 863, a subcontractor who installed concrete in the homeowners' pool was found to owe a duty of care to the homeowners based on a balancing of the *Biakanja* factors. In *Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, real estate developers were determined to owe a duty of care to the eventual purchaser of a single-family residence that was marketed to the general public. And, recently, the Supreme Court held that a principal architect owed a duty of care to future homeowners for the design of a residential building, even though the architect did not actually build the project or exercise ultimate control over construction. (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP*, *supra*, 59 Cal.4th 568 (*Beacon*).)

Thompson contends that it owed no duty to the Princes, arguing that it was merely a "passive seller" and that others chose the flagstone that was installed at the property. According to Thompson, exposing a seller to liability for negligence would "transform the building material supply industry," eventually leading to an increase in costs of insurance and goods. The principle that a seller can be liable for negligence based upon the sale of a defective product is not novel or of recent vintage, however. "Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products." (*Vandermark v. Ford Motor Co.* (1964) 61 Cal.2d 256, 262.) Thus, in *Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d

10

379, 383, the Supreme Court found that a retailer could be liable for negligence due to the sale of a defective ladder. Furthermore, privity of contract is not required for a seller to face liability for sale of a defective product. In *Beacon*, the Supreme Court noted, "Although liability for the supply of goods and services historically required privity of contract between the supplier and the injured party, the significance of privity has been greatly eroded over the past century," and that the "declining significance of privity has found its way into construction law." (59 Cal.4th 568, 574.)

Thus, Thompson potentially can be liable under a theory of negligence for the sale of a defective product, even though it did not specifically recommend the Colonial Cream flagstone. Evidence presented in connection with the motion for summary adjudication tended to show that Thompson sold the product as flagstone and that the product was used as flagstone at the property. Evidence also tended to show that the product, when used as flagstone, was defective. Although Thompson may be able to raise a number of defenses at trial that would defeat the negligence claim,[4] we believe that, in moving for summary adjudication, Thompson presented insufficient evidence or legal argument to establish that the Princes cannot assert a negligence cause of action simply because (i) the Princes did not personally purchase the flagstone and (ii) Thompson did not recommend the Colonial Cream flagstone.

We also must examine the *Biakanja* factors to determine whether Thompson established that it did not owe the Princes a duty of care. The first factor, the extent to which the transaction was intended to affect plaintiffs, clearly weighs in favor of the Princes, as Thompson knew that the flagstone was for use at the property.[5] The second factor weighs in favor of the Princes because it was foreseeable to Thompson that if it

---

[4] For example, Thompson could potentially argue that the flagstone was improperly installed or that flagstone is not the proper material for a patio and pool deck.

[5] Evidence showed that Thompson knew the flagstone was for use at the property, that Thompson repeatedly delivered materials to the property, and that Thompson representatives visited the property.

11

delivered a defective product to a homeowner, the homeowner could suffer harm. The Princes submitted evidence that they were injured, thereby satisfying the third factor, and there was a potentially close connection between Thompson's conduct and this injury. The last two factors likewise favor the Princes because society benefits if building material sellers refrain from offering defective products that lead to property damage. In sum, based upon a balancing of these factors, we find that Thompson failed to establish that it did not owe the Princes a duty of care.

Moreover, the Princes submitted sufficient evidence to show that they suffered more than mere economic injury, another argument at issue on Thompson's first motion for summary judgment. Contrary to Thompson's assertions, the Princes' complaint did not only seek economic damages—it sought recovery for damages to the "project," which included the property as a whole. In opposing the motion for summary judgment, the Princes submitted evidence that debris from the flagstone caused consequential damages to the property, including damaged pool equipment, which had to be replaced multiple times.

The trial court, therefore, erred by granting summary adjudication of the negligence claim.

## IV.  Thompson's Cross-Appeal

Thompson contends that as the prevailing party in the trial court it was entitled to an award of attorney fees. Because we reverse the trial court judgment, Thompson's cross-appeal is moot.

## DISPOSITION

The judgment in favor of Thompson is vacated, and the trial court is directed to enter a new order denying summary judgment and denying summary adjudication of the Princes' breach of implied warranty of merchantability and negligence claims. Summary adjudication of the breach of implied warranty of fitness claim was proper.

Thompson's cross-appeal from the court's order denying recovery of attorney fees is dismissed as moot.

12

The Princes shall recover their costs on appeal and cross-appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.